# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1863.

PEOPLE *ex rel.* BURR *v.* DANA *et al.*

22 11
123 671

EAST Street, San Francisco, extends from Folsom to Market Street, the latter and not Jackson Street being its northern terminus.

It is a cardinal rule of interpretation that a statute must be construed with reference to the objects intended to be accomplished by it.

The object of the Act of 1851, commonly called the "Water Lot Act," was to provide for the disposition of the water lot property, and not to interfere with the location of streets; and the designation therein of one of the boundaries of that property as the "eastern line of East Street to its point of intersection with the northern line of Jackson Street," was not intended, nor did it operate to extend East Street northward to Jackson.

*Jacobs* v. *Kruger* (19 Cal. 411) affirmed.

Where an act of the Legislature, providing for the disposition of State property, exempted from its provisions that portion of the property "known as the Government Reservation," except as to certain leasehold estates therein which were confirmed: *held*, that whether the reservation had any legal existence or not, was immaterial; all that was known by that name being exempted from the operation of the act except as to the leases confirmed by it.

The reservation attempted to be made on behalf of the United States Government in 1847, by the military officers then exercising authority at San Francisco, embraced all the lots lying between Montgomery Street on the west and deep water on the east, and by "deep water" was meant the place used as an

anchorage for vessels, the intention being to fix the eastern boundary at some undefined point in the bay beyond the line of the city front.

Where the Legislature, at the time of the passage of an act concerning water lots in San Francisco, had before it an official map of that city upon which was marked a selection called the "Government Reservation," to which map reference was made in the act: *held*, that the map must be regarded as a part of the act, and that the Legislature, in speaking of the reservation, must be presumed to have intended what was marked on the map as such.

APPEAL from the Twelfth Judicial District.

The complaint avers, that in the City of San Francisco there is a street known as "East Street," which is one hundred and thirty-seven and a half feet wide, and extends from Jackson to Folsom Street; that by an Act of March 26th, 1851 (generally known as the Water Lot Bill), it was provided that all the lots within certain boundaries therein named were known and designated as beach and water lots, and the eastern line of East Street, from Jackson to Folsom streets, was declared to be one of the boundaries of said beach and water lots, which provision was intended for the purpose of establishing, opening, and dedicating East Street to public use as a street; that by the Act of April 26th, 1858, it was provided that all the streets within the water line front of the city, as laid down on the official map and high water mark, and all the streets mentioned and referred to in the aforesaid Act of March 26th, 1851, to the full extent of said streets as laid down on the map or plat of J. J. Gardiner, Surveyor, were confirmed, established, and dedicated to the public use as streets; that East Street is one of the streets so confirmed, established, and dedicated; that it is the street mentioned and referred to in each of the aforesaid acts; that it is one of the streets lying between high water mark and the water line front of the city; that it is one of the streets laid down on the official map, and also on Gardiner's map; and that the foregoing provision was inserted in the Act of 1858 for the purpose of establishing, confirming, and dedicating East Street to public use as a street; that on June 26th, 1856, the Board of Aldermen and Assistant Aldermen of the city passed an ordinance, which was approved by the Mayor, declaring East Street open from Folsom to Clay Street, and

dedicating it to public use as laid down on the official map; that on June 30th, 1856, the said Board of Aldermen and Assistant Aldermen passed another ordinance, which was approved by the Mayor, declaring East Street open from Clay to Jackson Street, and dedicating it to public use as a street as laid down on the official map; that for more than six years last past East Street has been and is now a common and public highway or street for the people of the State, and during said time has been repaired from time to time at the expense of the property owners adjoining the street, and at the expense of the inhabitants of the city by means of assessments upon the adjoining lots or blocks by virtue of certain Acts of the Legislature; that all the people of the State ought to have a free right of transit over said street, but that defendants have lately obstructed said street with buildings from Clay to Jackson Street so as to prevent travel over the same, and they threaten to continue said obstructions; that unless said obstructions are removed all travel over said street will be thereby prevented, and that said obstructions are a public nuisance; that the relator and other citizens have often requested the defendants to remove the nuisance, but they refuse to do so, and falsely pretend that the ground covered by said buildings is not a public street.

The prayer is that the defendants be required to abate the nuisance and be enjoined from continuing it.

The answers of defendants admit there is in said city a street called East Street, but deny that it extends from Folsom to Jackson Street; on the contrary, they aver it only extends from Folsom to Market Street. They admit that by the Act of March 26th, 1851, the eastern line of East Street, from Folsom to Jackson, is designated as one of the boundaries of the beach and water lots, but deny that such boundary was inserted for the purpose of establishing, opening, or dedicating East Street, or that it was established or dedicated as a public street by said act, or that it was the object of the act to extend, open, or dedicate East Street beyond the actual limits of it as laid down on the official map referred to in the act; and they aver that the act, in bounding the beach and water lots by an extension of the east line of East Street to the north line of Jackson Street, intended only the protraction of said

line as a single line, to mark and indicate the boundary of the permanent water front of the city, and not for the purpose of extending East Street. They deny that it was the intention of the Act of April 26th, 1858, or that said act operated to establish and dedicate or extend East Street between Market and Jackson; and they aver that even if such extension and dedication were contemplated by the act, the same was null and void as against the defendants, who are and were, long before the passage of the act, the *bona fide* owners of the property claimed in the complaint to constitute East Street; and they aver that no proceedings had been had for the purpose of condemning the property for the purposes of a street, or for extending or establishing East Street from Folsom to Jackson, nor any mode provided or attempted for compensating the defendants for said land. That if any such ordinances were passed as described in the complaint, they were null and void; because no provision was made for ascertaining the value of said lands to be so dedicated, and none for compensating the defendants who owned the land. They deny that East Street was ever extended from Folsom to Jackson Street either in law or in fact; or that what is claimed as East Street, between Folsom and Jackson, was, or ever has been, or is now, used as a public street or highway, or that the same has been repaired as stated in the complaint, or that any one ought now, or at any time, to have the free use of said land as a street. They admit that they have erected buildings on the land, but deny that these buildings obstruct any portion of East Street. They aver that the buildings were erected more than six years ago, during all which time they have been in the peaceable occupation and enjoyment of them. They admit that they intend to continue and maintain the said buildings, and deny that in doing so they will commit a nuisance or inflict a wrong upon the public; and deny that the land in contest has ever been or is now set apart for and used as a public street or highway, or has been since 1851 repaired at the expense of any one.

All the testimony in the case was taken and reported by a referee appointed by the consent of the parties, and upon his report and the pleadings judgment was rendered by the Court in favor of the plaintiffs. The defendants moved for a new trial, which motion

was denied, and the defendants have appealed both from the original decree and the order denying a new trial. The evidence, so far as it is material, is stated in the opinion of the Court.

*Crockett & Crittenden, Baldwin & Haggin,* and *S. Heydenfeldt,* for Appellants.

I. The water lot bill did not have the effect to dedicate the street, because

1st. The first, fourth, and fifth sections were designed only to establish boundaries, and for no other purpose. (*People* v. *Kruger,* 19 Cal. 411.)

2d. The Government Reserves are expressly excepted from the operation of the act, except for the purpose of confirming the title of the lessee.

3d. It would have closed up the public slips, which it was not the purpose to do, as is plain from the first and second sections of the Act of May 1st, 1851. (See Session Acts, 1851, 311.)

4th. By the water lot bill, no street or open space adjoining the water front, is left between Jackson and Pacific; and it is, therefore obvious, that it was not the design to leave an open thoroughfare all around the city front.

5th. That in calling for the lines of streets, it refers only to the lines to be extended, is evident from the fact that a majority of the streets called for had not then been opened, or extended; and if calling for the lines is to operate as a dedication, when no street had in fact been opened, or laid down on the map, then it would extend and dedicate Simmons Street from its southern end to the south line of the city; (see last call in the bill, end of first section); and Davis Street north of Pacific—Jackson, Pacific, Broadway, and in fact almost every street called for.

6th. The water lot bill does not convey the fee to the city; but only the use for a term of years; and the sole object of the first section is to define the boundaries, and not to open or dedicate streets.

7th. The city was then a corporation, with full power to open, dedicate, and regulate streets; and there is no reason to infer that the Legislature intended to abridge or interfere with this power.

8th. If it had been intended to open or dedicate streets, the act would have explicitly declared it.   Dedication ought to be by clear and explicit acts, before the owner will be presumed to have surrendered his property to the public.   (*Badean* v. *Mead,* 14 Barb. 321.)

9th. Subsequent legislation shows that the water lot bill, in calling for the line of East Street, only used it as a boundary line, and not as a dedication of the street.

See act to confirm certain contracts for building wharfs.   (Acts 1851, 313.)   Also, acts to provide for the sale of the State's interest in said land. (Acts 1853, 219.)   This act excepts the slips, seventh section, but orders the Government Reserves to be sold ; also, act to provide for the sale of slips, and dedicating the streets named in water lot bill. (Acts 1858, 325.)   Also, act declaring original streets, as laid down on official map, and all others dedicated to public use, to be open public streets, and directing Supervisors to ascertain and establish the width.   (Acts 1859, 135.)

II.   If the water lot bill had, in express terms, extended and dedicated East Street to Jackson, the State being the owner of the soil, the Legislature had the power to revoke the dedication, except so far as private rights have vested under the dedication.   The holders of these rights may have their redress by an appropriate action, when they are invaded ; but the property is entirely under the control of the State, subject to such easements as private persons have acquired, and the public at large cannot complain, if the State chooses to sell its property, instead of allowing it to be used as a street.   (*Clements* v. *West Troy,* 16 Barb. 251; *City of Oswego* v. *Oswego Canal Co.,* 2 Selden, 257.)   If East Street were in fact dedicated, the dedication was revoked by the sale of the property by the State, under the Acts of 1853–1855.

III.   The city acquired no title to such parts of the land within the water lot boundary, as are embraced in the Government Reserves ; but even were it otherwise, the State had the power to reclaim it at any time whilst the title was in the city.   Municipal corporations are entirely under the control of the Legislature, and may be altered or abolished at pleasure.   They have no vested public rights which the Legislature may not take away.   (Angel & Ames on Corp. Secs. 30, 31.)

IV.   The public as such, can acquire no vested right save those protected by the Constitution, which the Legislature may not abolish; and the right of the public to use a highway, is entirely subject to legislative control, whether it lie within or without the limits of a municipal corporation; and the sale of the property by the State, defeats any public right to use it as a highway, unless by compensation to the owner.   Any other rule would make a highway perpetual; and when once established, it could never be altered or abolished, even by a legislative act.

V.   The proof establishes conclusively, that the Government Reserve extended to ship's channel towards the east, and was not limited by the city front; and, therefore, the city acquired no title to this land under the Act of March 26th, 1851.   The title of the lessee and of the State having vested in the defendants, the city had no power, by ordinance, to open the street without compensation to the owners.

VI.   If, however, the reserve was limited to Front Street, so that the city acquired under the water lot bill, the title to the lands east of Front Street, her title was divested by the execution sales, and passed to the defendants, after which the city had no power to open the street, without compensation to the owners.

*Nathaniel Holland*, for Respondents.

I.   East Street was dedicated as a public highway by the original plan of the city.   The question of fact involved in this proposition is apparent upon the examination of the grant of Gen. Kearny to the town of San Francisco of the beach and water lots made the tenth day of March, 1847.   One of the conditions of the grant was, that the town authorities should divide the " ground into lots." Immediately after the delivery of the grant, and in compliance with the conditions, the authorities caused a survey, and a plan, or map, to be made by the then official Surveyor, Jasper O'Farrell, who completed the survey and plan of the ground on the sixteenth day of July, 1847, which survey was accepted by the authorities.   The map is known as the O'Farrell Map.   This map was the first one made by any authority of the beach and water lots, and was accepted and adopted as the plan of the town.   By the making

and accepting the map, taken in connection with the grant of Gen. Kearny, a street thereby is dedicated, extending through the entire water front, and lying between the bay and the lots sold by the authorities of the town of San Francisco.

II.   East Street was dedicated by positive enactment. (Act of March 26th, 1851, entitled "An Act to Provide for the Disposition of certain Property of the State of California;" Act of May 5th, 1853, on same subject.)

The Common Council of the City of San Francisco, on the twenty-sixth of June, 1856, passed an ordinance declaring East Street, from Clay to Jackson Street, a public street.

In 1855, J. J. Gardiner, City and County Surveyor, made a map of the city and county. Upon this map, East Street is laid down from Folsom to Jackson Street as claimed by respondents; and the Legislature by another act, passed April 26th, 1858, declared all the streets laid down upon that map, also all the streets referred to in the Act of March 26th, 1851, open public streets.

III.   The street was dedicated by actual usage. (See evidence.)

IV.   The appellants have no title either legal or equitable. Because: 1st, the reserves under which they claim never extended as far east as East Street; and, 2d, they have acquired no title by execution; and, 3d, they have derived no valid title from the State.

The only point considered by the Court in the case of *Jacobs* v. *Kruger* was the construction of the Act of March 26th, 1851, and the Court seems to have read the act by inserting the word "protracted" so as to make it read thus "thence northerly on the eastern line of East Street protracted to its point of intersection with the northern side of Jackson Street." The facts in this case are different from those presented in that.

In the case of *Wood* v. *City of San Francisco* (4 Cal. 190) the Court held, in construing the Act of March 26th, 1851, that it was not necessary that the street should be marked upon the map. In that case, the streets were not marked in any way, and the Court held, " Where a city is laid out with streets running to the water,

such streets should be held to continue on to high-water mark."
The Chief Justice in that case, says: " In view of the importance
of this principle as well as in its consequences, I can come to no
other conclusion than that all the public streets of the City of San
Francisco running into the water or laid down on the official map
of the city were by the operation of the Act of March 26th, 1851,
extended and carried to the front line of the city, and as such are
subject to the free enjoyment of the public."

This is just the principle involved in the question presented in
the case at bar.   It has been clearly shown by the testimony, that
Clay, Washington, and Jackson streets terminate at the west line of
East Street, and upon the principle of the case recited, East Street
is carried along the water front precisely in the same manner as
Broadway was to the eastward of Front Street.

Cope, J. delivered the opinion of the Court—Field, C. J. con-
curring.

This is an action to abate a nuisance caused by the erection of
buildings upon what is alleged to be a public street in the City of
San Francisco, known as East Street.   The case is important
simply in its public aspect, and the value of the property to be
affected by its decision ; the principles involved are of little conse-
quence.   The only question is whether East Street extends along
the water front of the city from Folsom Street to Jackson Street,
as the plaintiffs contend, or merely from Folsom to Market, as is
contended by the defendants.   The buildings complained of are
situated between Washington and Jackson streets, and the property
is claimed by the defendants under a title derived from the State,
and under a purchase at an execution sale as the property of the
city.   There is no question of the validity of their title, unless the
property had been dedicated to public use as a street.

The plaintiffs contend that the property had been so dedicated,
and in support of their position they rely chiefly upon an Act of
the Legislature passed in 1851, commonly known as the Water
Lot Act.   It is entitled " An Act to provide for the disposition of
certain Property of the State of California," and the property is
described by metes and bounds, and designated as the " San Fran-

cisco Beach and Water Lots." It provides that the boundary line therein set forth shall be and remain the permanent water front of the city, and gives to the city, with certain exceptions, the use and occupation of the property described for the term of ninety-nine years. One of the boundaries given is the " Eastern line of East Street, to its point of intersection with the northern line of Jackson Street ;" the initial point of the boundary thus given being on the southern line of Folsom Street. On the official map of the city, which was before the Legislature when the act was passed, East Street is laid down as extending only from Folsom Street to Market, and there is no evidence that it extended north of Market Street prior to that time. It is claimed that the reference in the act to its eastern line as a boundary, operated as an extension and dedication of it from Market Street to Jackson.

This point was before us in *Jacobs* v. *Kruger* (19 Cal. 411), and we there held that the construction contended for was inadmissible ; that the dedication of a street was foreign to the purposes of the act, and not within the intention of the Legislature. It is a cardinal rule of interpretation that a statute must be construed with reference to the objects intended to be accomplished by it, and the only object of the act in question was to provide for the disposition of the water lot property. Its provisions point to that object alone, and it is impossible, if we are to be governed by the ordinary rules of construction, to regard a mere reference to a street for the purpose of designating a boundary as extending the street itself. The intention of the Legislature was merely to establish a boundary, and the eastern line of East Street was adopted for convenience and certainty in fixing its location and course. This is the more apparent from the fact that the boundary established is longer than the eastern line of East Street, even if the street were extended, its initial and terminating points being separated from that street by Folsom Street at one end, and by Jackson Street at the other. These points could only be ascertained by protracting the line at each·end of the street; and as the protracted line was necessarily in the mind of the Legislature, there is no ground for supposing that the intention was to extend the street. It is superfluous, however, to discuss the question, for the case cited is directly in point,

and we see nothing in the arguments of counsel to justify us in overruling it.

In addition to this, the defendants claim that the property is a part of the property formerly known as the Government Reservation, which, except in one particular, was exempted from the operation of the act. The act provides that " the property known as the Government Reservation is exempt from the operation of this act; except that any estate held by virtue of any leases, executed or confirmed by any officer of the United States on behalf of the same, shall · be and the same are hereby granted and confirmed to the lessees thereof." It appears that the reservation referred to consisted of three distinct parcels of land, and that it was made by officers of the United States for the use of the Government in the erection of buildings and wharfs. The parcel of which this property is claimed to be a part, is bounded on the west by Montgomery Street, on the north by Jackson Street, and on the south by Washington Street, and the only question is as to the boundary on the east. The plaintiffs contend that the eastern boundary is Front Street, and that as the property in controversy lies east of that street, it was not included in the exemption, but came within the general provisions of the act. It is immaterial, of course, that the reservation had no legal existence, the property belonging to the State, and all that was known by that name was exempted from the operation of the act, except as to the leases confirmed by it. The defendants claim under a lease thus confirmed, and the matter resolves itself simply into the inquiry as to what was known at the date of the passage of the act as constituting the reservation.

We do not propose to state at length the evidence on this point, but shall refer to such portions of it as we deem most material and conclusive. On the tenth of March, 1847, General Kearny, Military Governor of California, executed a paper purporting to be a grant to the town of San Francisco, of the beach and water lots lying on the eastern front of the town within certain limits, but reserving such lots as should afterwards be selected for the use of the Government. On the twenty-third of June, W. T. Sherman, A. A. General, addressed a letter from headquarters at Monterey, to Major Hardie, at San Francisco, directing him, in connection

with the senior officers of the army and navy at that point, to make the selections referred to in the grant; the selections to be such as were best suited for wharfs for army and navy purposes, with space enough for the erection of buildings, etc.   On the receipt of this letter Major Hardie proceeded to make the selections, and on the eighteenth of July addressed a letter to the Alcalde of the town, notifying him that the lots intended to be reserved had been selected, stating their respective locations and boundaries, and giving as the eastern boundary the bay, running out to deep water. In connection with and as a part of these transactions a survey was made and a map prepared under the direction of the town authorities, and the selections are laid down on the map as extending indefinitely to the east, in accordance undoubtedly with the understanding of the authorities upon the subject.   The map is referred to by Major Hardie in describing the reserved property, and is thus made a part of the description, and we regard it, in connection with this letter to the Alcalde, as conclusive evidence of the extent of the selections.   The selections are indicated upon it by the words " Government Reserve," and by dotted lines extending east of Front Street towards the deep water of the bay, showing, of course, that the assumption of the plaintiffs as to the eastern boundary is unfounded.   The only evidence sustaining it is contained in the testimony of Lieutenant Gibson, who, in 1849, at the request of Captain Keyes, then in charge of the property for the Government, made a map or sketch fixing the boundary at Front Street; but the facts stated prove beyond question that he was mistaken in his view of the matter.   Captain Keyes states that he took possession of the property in August, 1849, and had charge of it until he leased it by order of General Riley, late in the fall of that year, and that he was governed in regard to its extent by the letter of Major Hardie to the Alcalde.   The leases executed by him designate as the boundary on the east the limits of the town or deep water, and the clear result of the evidence is that the selections embraced everything necessary to preserve an open and unobstructed communication with the bay.   In other words, that they embraced all the lots lying between Montgomery Street on the west and deep water on the east, and it is obvious that the deep water

referred to was that used and occupied as an anchorage ground for vessels. There can be no doubt of the correctness of this view of the extent of the selections as originally made, and the only further question is as to the limits to be assigned to them under the provision of the Act of 1851, exempting them from its operation.

When the act was passed the Legislature had before it the official map of the city, compiled in 1851 by W. M. Eddy, which map is referred to in the act itself, and must be regarded as a part of it. On this map the selections are marked as extending east of Front Street to and beyond the eastern front of the city as there laid down, which was adopted and established by the act as the permanent water front of the city. Their position and extent are indicated in the same manner as upon the map previously alluded to, and it is impossible to draw but one conclusion as to the understanding of the Legislature in regard to their eastern boundary. The understanding undoubtedly was that they had no definite boundary on the east, but were open slips, extending not only to the city front, but beyond it, and terminating in the bay. The map is the most authoritative evidence in the record as to what was known at that time as constituting the reserved property, and we regard it as decisive of the question. The property is delineated upon it in accordance with our view of the selections as originally made, and in conformity, as we are satisfied, with the general understanding upon the subject.

Our conclusion on this point covers the entire case, and the judgment is reversed and the cause remanded with instructions to the Court below to dismiss the action.