[Civ. No. 1194.   Third Appellate District.—February 12, 1914.]

## GOLDEN & COMPANY (a Corporation), Petitioner, v. THE JUSTICE'S COURT OF WOODLAND TOWNSHIP et al., Respondents.

Intoxicating Liquors—Power of Municipality to Prohibit Sale—Solicitation of Orders—Place of Delivery.—The legislative authority of a municipality or political subdivision of the state cannot enforce penalties against persons soliciting orders within its jurisdiction for intoxicating liquors, in cases where such liquors are to be delivered outside the limits of such subdivision.

Id.—Wyllie Local Option Law—Solicitation of Orders—Place of Sale or Delivery.—Section 15 of the Wyllie Local Option Law (Stats. 1911, p. 599), which makes it unlawful for any persons "within no-license territory to solicit orders, take orders, or make agreements for the sale or delivery of alcoholic liquors," cannot be invoked by a municipality to prohibit the solicitation or taking of orders within its limits for the sale or delivery of such liquors without its boundaries.

Id.—Sale of Liquor—Complaint Charging—Jurisdiction of Justice's Court.—A complaint which, in the language of the statute, charges the solicitation of orders for the sale of intoxicating liquors within "no-license territory," is sufficient to give a justice's court, acting as a magistrate's court, authority to preliminarily examine and pass upon the charge, although it does not directly appear from or upon the face of the complaint whether the liquor was to be delivered within or without the territory.

Id.—Order for Sale of Liquor—Manner of Taking.—Section 15 of the Wyllie Act, which makes it unlawful for any person, company, association, or club, within no-license territory, to solicit orders, take orders, or make agreements for the sale or delivery of alcoholic liquors, does not contemplate that the prohibited solicitation must be carried on within such territory in person by a party or his agent. Such section was intended by the legislature to prevent, if possible, or to penalize, if committed, the solicitation of orders, the taking of orders or the making of agreements within no-license territory for the sale or delivery of intoxicating liquors in such territory, irrespective of the manner in which such acts might be accomplished.

Id.—Personal Solicitation of Orders Unnecessary — Taking of Orders by Mail.—One who solicits orders or makes agreements through the instrumentality of letters, sent to the addresses in no-license territory of persons residing or being therein, thus brings

himself as clearly under the ban of the statute as if he were to prosecute such solicitation or make such agreements in person within the boundaries of such territory.

ID.—INTERPRETATION OF STATUTE—PURPOSE OR OBJECT OF ACT.—Every statute must be construed with reference to the object intended to be accomplished by it; and in order to ascertain this object, it is proper to consider the occasion and necessity of its enactment.

ID.—GRAMMATICAL CONSTRUCTION OF STATUTE—WHEN MAY BE RE-JECTED.—Where a statute may be given a grammatical construction leading to a result in manifest opposition to its purpose and intent, or in circumvention of its paramount object, such construction will be rejected and one adopted which will effectuate or carry out the object designed by the legislature to be accomplished by the act.

ID.—LIQUOR FOR HOUSEHOLD USE—SOLICITING ORDERS FOR PROHIBITED.—The act of soliciting orders from individuals for household purposes was intended to be and is enjoined by the Wyllie Act.

ID.—SALE OF LIQUOR—PLACE OF CONSUMMATION.—Under such act it is not important, so far as concerns either the act of soliciting orders or that of making agreements for the sale or delivery of intoxicants, whether the sale contemplated by such solicitation or agreements is consummated outside of the territory, for the gist or gravamen of the offense of soliciting orders or that of making agreements for intoxicants within such territory is in the solicitation or the making of the agreements with the purpose and intent of delivering such liquors therein.

ID.—MANNER OF TAKING ORDERS FOR LIQUOR—SCOPE OF WYLLIE ACT.—The Wyllie Act is intended to prevent every kind and character of solicitation, whatever may be its form, whether in person or by letter or other like communications sent either from without or from within no-license territory through the United States mail or by messengers and addressed to persons within such territory, except pharmacists, at their residences or places of business.

ID.—DISTINCTION BETWEEN SOLICITING ORDERS BY LETTER AND BY NEWS-PAPER ADVERTISEMENT.—There is a distinction between the solicita tion of orders by means of letters or circulars sent through the mail to particular individuals in no-license territory, and the cir-culation in such territory of newspapers containing advertisements extolling the quality and giving the price of certain brands of liquor. In the first case the minds of particular persons are directly addressed upon a single subject and their attention thus specially called to the subject matter of the letter or circular, while in the other no particular person is appealed to upon any one of the various matters which are usually referred to in or given publicity through the medium of the advertising columns of a newspaper of general circulation.

ID.—WORDS AND PHRASES—MEANING OF WORD "SOLICIT."—The word "solicit" implies personal petition and importunity addressed to a particular individual to do some particular thing, and it is unquestionably in this sense that the term is used in the Wyllie Act.

ID.—SOLICITING ORDERS FOR LIQUOR BY MAIL—VENUE OF OFFENSE.— The solicitation of orders for liquor by mail in no-license territory is complete upon the receipt of the letter by the person to whom it is addressed, and the venue of the offense is in that county.

APPLICATION for Writ of Prohibition to be directed against the Justice's Court of Woodland Township, County of Yolo, and J. E. Strong, Justice of said court.

The facts are stated in the opinion of the court.

Hoefler & Morris, and Rothchild, Golden & Rothchild, for Petitioner.

I. M. Golden, and J. A. Pritchard, *Amici Curiae.*

HART, J.—This is a petition for a writ of prohibition to restrain the above named respondents from "taking any further proceedings pending in the case of the People of the State of California, Plaintiff, *v.* Golden & Company, a corporation, in said justice's court, and from hearing, determining, passing upon, trying or deciding any proceeding in said case," etc. etc.

This proceeding arises by reason of the filing of a complaint, on the twenty-first day of June, 1913, in the respondent court, by the district attorney of Yolo County, charging the petitioner with the violation of section 15 of the Local Option Law, popularly known as the "Wyllie law," and passed by the legislature of 1911. (Stats. 1911, p. 599, et seq.) The specific charge against the petitioner is that it solicited the sale of certain alcoholic liquors within the limits of the city of Woodland, a municipal corporation, it being admitted by the petitioner, for the purposes of this case, that, prior to the time at which the petitioner is alleged to have committed the offense with which it is charged in the complaint objected to here, at an election, held in said city, in pursuance of the provisions of said local option law, the electors voted in favor of the application of the provisions of said law to the territory embraced within the corporate limits of said city and thus de-

clared that said municipality should thereafter be no-license territory.

From the petition in this proceeding it appears that the petitioner "is and was at all the times herein mentioned a corporation duly organized and existing under and by virtue of the laws of the state of California; that its principal place of business is in the city and county of San Francisco, in said state of California, and is and at all times herein mentioned was lawfully engaged in the business of selling, furnishing and distributing alcoholic liquors." It is further alleged that said petitioner was not at any of the times mentioned in the complaint filed against it "a person, company, association or club being or existing within the limits of the county of Yolo"; that it has no place of business within the limits of the said county of Yolo, but, "as said complaint shows upon its face, has its principal place of business in the city and county of San Francisco," etc.; that, "as appears upon the face of the said complaint the said alleged violation of the said act consisted solely of the mailing of certain letters, price lists, and an order sheet at the city of San Francisco, . . . addressed to a resident of the city of Woodland, in said county of Yolo, the said circular letter, price lists and order sheet constituting an advertisement of certain alcoholic liquors offered for sale by your petitioner; that it appears upon the face of the said complaint that all and singular the acts constituting the alleged offense as aforesaid were committed wholly in the city and county of San Francisco, . . . and wholly without the said city of Woodland and the said county of Yolo." The petition then alleges that it does not appear upon or from the face of the complaint that the offense, purporting to be therein and thereby charged against the petitioner, or that any offense whatever, was committed within the limits of the county of Yolo or within the jurisdiction of the said court of Woodland township; "that the said court of Woodland township has no jurisdiction of your petitioner or of the attempted criminal proceeding."

The complaint filed in the respondent court against the petitioner and to restrain proceedings under which this proceeding is instituted is made a part of the petition and attached thereto.

It is charged in said complaint that, on or about the twenty-eighth day of May, 1913, the defendant corporation mailed a letter at the city of San Francisco addressed to a Mr. James Monroe, at Woodland, California; that said letter, which characterized itself as a "circular," contained an offer, designated therein as "our final offer," to consign to the said Monroe, at any time within thirty days from the date of the letter, "one full quart of this fine 'Old Reserve' whiskey, by return express, for only 50 c.," (no doubt meaning fifty cents). Said circular letter then proceeds: "This is a special introductory offer we are making to NEW customers only—and if YOU have never tried 'Old Reserve' Whiskey—we want you to try it NOW. We want to Show you. We want to place some of our fine 'Old Reserve' Whiskey before you so you may know how rich, pure and delicious it really is—and here's the greatest offer you ever heard of.——Send us 50 cents—that's All and we will send you a full quart bottle of our fine 'Old Reserve Whiskey—in a strong, plain case, by return express.——Remember—It's Pure Kentucky Whiskey and every bottle has our absolute guarantee that it is fully aged and full measure—as good and pure as it is possible to produce.——You take no chances. Our guarantee is fair and square—it means what it says—we must send you a quality that will please you in every way—and we will do it.——We lose Money shipping one quart means a loss to us—but we want your trade—and we know when you have tried this whiskey, you will be so pleased with it, that you will send us your future orders for at least a gallon at $3.60 or four full quarts for $4.00 and then we pay all the express charges.—— A Wonderful offer. No one else offers a single quart of whiskey at our price of 50 cents a quart—no one else would be willing to lose money on a one quart shipment as we are doing simply to prove our claims for 'Old Reserve'.——Take us up on this offer—order this whiskey—try it—use all you want—and if you don't find it all we claim—the finest you ever tasted and the greatest value you ever saw—we will return your money together with all express cost without a word.——Now, Rush Your Order. Cut out this coupon—fill it in—and mail it to us with 50 cents in stamps, coin or money order—and the full quart of fine 'Old Reserve' Whiskey will go by first express. You must pay express charges on this

single quart shipment. The cost is small—only 25c to 50c, according to distance from San Francisco, but no matter how much expressage you paid, you will get a wonderful bargain. Golden & Co. 130 Pine St. San Francisco, Calif.

"Golden & Company. Not good after 30 days."

Accompanying said letter were the price lists of the various brands of whiskies and wines and "miscellaneous liquors" handled and sold by the petitioner and an order sheet, in blank, to be used by the party to whom the letter was addressed, if he elected to purchase any of the liquors referred to in the letter and the price lists.

Manifestly, the ultimate question presented here, as is stated in the petition as well as is necessarily implied from the nature of this proceeding, is one of jurisdiction. That the respondents, as a magistrate's court and the presiding magistrate thereof, are wholly without legal authority or jurisdiction to examine the charge set forth in the complaint assailed by this proceeding, is sought to be sustained upon the following grounds: 1. That, within the meaning of the language of the Local Option Law, there can be no solicitation of orders for the sale of alcoholic liquors within no-license territory unless the sale and delivery of such liquors are made or intended to be made within such no-license territory; 2. That section 15 of said act contemplates and intends that the solicitation interdicted thereby must be prosecuted in person within such territory by the persons or corporations, etc., mentioned in said section; or, in other words, that the solicitation contemplated by the section cannot be effectuated except it be done in person by such persons or corporations themselves or their agents, which proposition implies, of course, that they or their agents must be physically present within such territory when such solicitation takes place.

In addition to the points above specified, it is urged by Messrs. Golden and Pritchard, in a brief filed by them as *amici curiae*, that section 15 of said act contravenes certain constitutional guaranties.

Section 15 of the Local Option Law reads as follows: "It shall be unlawful for any person, company, association or club, within no-license territory, to solicit orders, take orders or make agreements for the sale or delivery of alcoholic liquors; *provided*, that this shall not apply to the taking of such orders

from a registered pharmacist at his place of business, or to the taking of orders for alcoholic liquors on the premises where stored or manufactured, under the conditions stated in section 16 hereof.''

Section 16 provides: Nothing in this act shall be interpreted as rendering it unlawful to keep alcoholic liquors for distribution, or to sell or distribute such liquors, in no-license territory in the manner following: 1. The serving of such liquors by any person at his own home to members of his family or to his guests, as an act of hospitality, when no money or thing of value is received in return therefor, and when said home is not a place of public resort; 2. The serving or dispensing of such liquors by a registered pharmacist for *bona fide* medical purposes, upon certain specified conditions, among which is that such liquors so dispensed shall not be drunk upon the premises where dispensed; 3. The selling of alcohol by a registered pharmacist for other than beverage purposes, upon certain designated conditions; 4 and 5. The selling of wine by a regularly licensed pharmacist for sacramental purposes only, on certain conditions, and the distributing of wine, at the sacramental service of any religious organization; 6. ''The keeping of alcoholic liquors at cellars, vaults or warehouses, receiving orders at such cellars, etc., for said liquors, and the shipping of the same therefrom; *provided,* said liquors are not distributed or delivered to any person or place in no-license territory within the county in which such cellars, etc., are located, except when delivered to a common carrier for shipment to a place outside of no-license territory; 7. The keeping of alcoholic liquors on the premises where manufactured, receiving orders at said premises for such liquors, and the shipping of the same from such premises; *provided,* said liquors are not distributed or delivered in no-license territory within the county in which such premises are located in quantities of less than two gallons, and are not delivered to any person, or place in such territory within said county except as follows: (a) to a common carrier for shipment to a place outside of said no-license territory; (b) to other manufacturers of alcoholic liquors at the premises where they manufacture such liquors; (c) to cellars, vaults or warehouses where such liquors are stored or distributed as provided in the sixth paragraph of this section; (d) to any person at his or

her permanent residence; (e) to registered pharmacists at their place of business.''

It will be observed that section 15 exempts from its operation, to the extent of *taking orders* for alcoholic liquors, registered pharmacists and those places where such liquors are stored or manufactured, as provided by paragraphs 6 and 7 of section 16. There is no exception made as to the soliciting of orders, unless it may be said (and perhaps it may reasonably be so held) that such authority is necessarily implied from the provision that such orders may be taken from registered pharmacists. The provision authorizing the taking of orders on the premises where alcoholic liquors are stored or manufactured undoubtedly has reference to sales by the manufacturers of intoxicants, and does not, therefore, authorize the soliciting or taking of orders for such liquors *from them,* to be delivered *to them.* It is quite clear, then, that, except possibly as to registered pharmacists, regularly licensed to engage in the prosecution of their business in no-license territory, no one has a legal right to solicit or take orders for intoxicants from persons within such territory.

Now, as above indicated, the first point urged by the petitioner is that the provisions of the Local Option Law do not and were not intended by the legislature to prohibit the solicitation within no-license territory of orders for the sale or delivery of alcoholic liquors, unless the liquors to which such solicitation relates are to be delivered within such territory. Indeed, the contention goes so far as to involve the maintenance of the proposition that, while the legislative department of the government may, in the exercise of the police power, prohibit the solicitation or the making of agreements for the sale of intoxicating liquors within no-license territory where such liquors are to be delivered therein, legislation inhibitory of such solicitation or the making of such contracts within no-license territory, where the liquors are to be delivered outside the limits of such territory, would be invalid as in restraint of trade or in contravention of the right of contract.

In the case of *Ex parte Anixter,* 22 Cal. App. 117, [134 Pac. 193], the petitioner sought to be relieved, through the writ of *habeas corpus,* of the effect of a judgment of imprisonment imposed upon him by the recorder's court of the town of Winters upon a conviction of the crime of soliciting orders

23 Cal. App.—50

within the limits of said town for intoxicating liquors, contrary to the provisions of an ordinance adopted by the governing board of Winters. It was there argued, as here, that the ordinance could not validly be so construed as to prevent persons from soliciting orders within the incorporated limits of Winters where the liquors to which such orders related were to be delivered outside of said limits, since such construction would operate in restraint of trade. In remanding the prisoner, and reviewing the point thus suggested, this court in effect held that the right of contract or the principles supporting inhibitions against legislation in restraint of trade could have no application in cases of prohibitory or regulatory legislation with respect to the traffic in alcoholic liquors. The writer of this opinion is the author of the opinion in the Anixter case referred to. It was then his impression that, since it is settled beyond all peradventure that the traffic in such liquors is, in a legal aspect, a nuisance *per se,* which is merely to say that the traffic may exist, if at all, only by and through the sufferance of the government and not as of right, the state, or any of its subdivisions to which such powers are committed, may, in the exercise of the powers of police, not only suppress the traffic entirely, but, in addition thereto, may adopt any regulation or character of legislation which will tend to remove every manner or form of temptation which might be introduced and which might have the effect of encouraging the use of such liquors or of generating in the people living within the territory in which the traffic is prohibited a sentiment favorable to the resumption therein of such traffic. In other words, I had always been of the opinion that all legislation, whose purpose was to minimize the use of intoxicants as beverages, whether such legislation was of a prohibitory or merely of regulatory character, solely applied to and operated upon the personal conduct of the inhabitants constituting the community or territory affected thereby, and, as stated, could have no relation to or in any manner affect or impair, in legal contemplation, the right of contract; that, therefore, the state, or any of its political subdivisions to which it had confided the right to execute within their respective limits the police power, could legitimately declare, if it so elected, that no transactions of any kind or character whatsoever respecting intoxicating liquors,

either as to the use thereof or the traffic therein, shall be inaugurated, conducted, or carried on within its boundaries. This power in the state with respect to the subject of intoxicating liquors I assumed had become absolutely complete and, indeed, supreme, since by the act of Congress, known as the "Wilson Act" (26 Stats. 313, chap. 728, [U. S. Comp. Stats. 1901, p. 3177, 3 Fed. Stats. Ann. p. 853]) intoxicating liquors had been expressly exempted from the operation of the commerce clause of the federal constitution. (*Delamater* v. *South Dakota,* 205 U. S. 93, [10 Ann. Cas. 733, 51 L. Ed. 724, 27 Sup. Ct. Rep. 447].) I hence concluded that it was within the rightful power of this state and its municipalities, to which has been delegated by our constitution full power in matters of the public police (Const., art. XI, sec. 11), to declare that the mere act itself of soliciting orders for intoxicating liquors or the making of agreements within its limits for the sale thereof, irrespective of the place where it was proposed or intended to deliver the liquors to which such solicitation or agreements related, whether within or without the boundaries of the state or political subdivisions within which such transactions were prohibited, and regardless of whether the result of such solicitation was a sale or an agreement to purchase any such liquors, shall constitute a public offense, punishable as the legislative power might deem necessary or wise to direct. I believed that such legislation could not be held to have extra-territorial operation, nor, therefore, operate in restraint of trade, since its effect was directly upon those within the territory affected thereby, and could in no manner or degree interfere with the right of persons living or being in a license territory to solicit or contract for orders for such liquors in such territory. I conceived that, in the views thus entertained and expressed, I was supported by many, if not all, of the cases in which the power of the state with respect to the use and business of trafficking in alcoholic liquors has been fully and exhaustively reviewed and expounded and held to be (particularly since the Wilson Act, removed such liquors from among the subjects affected by interstate commerce), plenary, and, indeed, unhampered by any of the constitutional guaranties whereby certain other occupations, in themselves useful and necessary, yet subject to police regulation, are justly shielded against the effect of

discriminatory legislation. Of these cases, I need mention only two, of which the one which may first be mentioned is that of *Ex parte Christensen*, 85 Cal. 208, 213, [24 Pac. 747], where it is said that the governing power may impose such conditions upon the existence of the traffic in alcoholic liquors as it pleases, and that, ''even if it be conceded that *the conditions were arbitrary, they were within the power of the board.''* The other is the case of *Delamater v. South Dakota*, 205 U. S. 93, [10 Ann. Cas. 733, 51 L. Ed. 724, 27 Sup. Ct. Rep. 447], wherein the court was called upon to consider and pass upon certain objections, based upon constitutional grounds, urged against the validity of a statute of the state of South Dakota, imposing an annual license charge upon ''the business of selling or offering for sale'' intoxicating liquors within said state, ''by any traveling salesman, who solicits orders by the jug or bottle in lots less than five gallons.'' Upholding the statute and replying to a branch of the argument set up in support of the claim that the legislation involved therein was invalid, the court, among other things, said: '' . . . The proposition here relied on is widely different, since it is that, despite the Wilson Act, the state of South Dakota was without power to regulate or control the business carried on in South Dakota of soliciting proposals for the purchase of liquors, because the proposals related to liquor situated in another state. *But the business of soliciting proposals in South Dakota was one which that state had a right to regulate, wholly irrespective of when or where it was contemplated the proposals would be accepted or whence the liquor which they embraced was to be shipped.''* Again, in that case, the court, after referring to certain cases, notably *Hooper* v. *California*, 155 U. S. 648, [39 L. Ed. 297, 15 Sup. Ct. Rep. 207], in which it was held that a state has the authority to prohibit and penalize the act of procuring, or agreeing to procure, any insurance from any foreign insurance company, unauthorized to do business within the borders of such state under the laws thereof (Pen. Code, sec. 439), uses the following language: ''It follows that the authority of the states, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the states to forbid agents of

nonresident liquor dealers from coming within their borders
to solicit contracts for the purchase of intoxicating liquors
which otherwise the citizen of the state 'would not have
thought of making' must be as complete as is such authority
in relation to contracts of insurance, especially in view of
the conceptions of public order and social well-being which it
may be assumed lie at the foundation of regulations concern-
ing the traffic in liquor.''

From the foregoing authorities and many others which
might be mentioned, I concluded that, if it be within the
power of the states to prohibit the soliciting of orders for the
sale of intoxicating liquors within their territorial limits, re-
gardless of where such liquors were to be consigned or de-
livered, it was equally within their right in the exercise of the
supreme control which it must be conceded that they possess
over the subject of intoxicating liquors, to delegate like power
to the municipalities within their borders (Const., art. XI,
sec. 11), or to other of their political subdivisions, whose
electors may themselves, by virtue of legally exercisable
authority, invoke the application, within their respective juris-
dictions, of the provisions of a general law, which determines
the extent and conditions to and upon which such liquors may
be used. (Stats. 1911, p. 599.)

The foregoing observations, let it be understood, are not
here made for the purpose of overthrowing the position of the
petitioner in this proceeding upon the question to which they
relate or of confuting the argument advanced in support of
said position; but they are merely ventured as explanatory of
the reasons which led to what now appears from a recent de-
cision of our supreme court, to have been an erroneous con-
clusion reached by this court in the Anixter case, as to the
point referred to.   The former court, in the case of *Ex parte
Anixter,* 166 Cal. 762, [138 Pac. 353], the self-same case which
was before this court and above referred to (the petitioner,
after being remanded by this court, having petitioned the
supreme court for and there claimed the right to his release,
through the writ of *habeas corpus,* for the identical reasons
urged in this court), has held that the petitioner here is right
in his contention that the legislative authority of a political
subdivision of the state cannot enforce penalties against those
soliciting orders within its jurisdiction for intoxicating

liquors, in cases where such liquors are to be delivered outside the limits of such subdivision. The court, in an opinion in that case, prepared by a justice of acknowledged learning and acumen and noted for the marked clearness with which he invariably expounds and applies to concrete cases the principles of jurisprudence, says: "The incorporated town of Winters in law cannot exercise control over the welfare of those beyond its corporate limits, and touching the liquor traffic its utmost right of control is to prevent soliciting and contracts of sale made within its limits for delivery of intoxicants therein. As a court, between two permissible constructions of a statute, will always give to it that which sustains its validity, so here it will be held that the ordinance applies, and applies only to the soliciting and contracting for the sale of intoxicants to be delivered within the town limits. But the town of Winters has no legal right to say that a contract may not be made within its limits for the sale of intoxicants to be delivered without those limits. Such an ordinance would not be a reasonable exercise of the police power and would plainly be in restraint of contract and of trade."

I take it that the principle thus enunciated is no less applicable to the Local Option Law where the provisions thereof are invoked by the electors of a municipality or of any other territory in the state to which the provisions of said law may be made to apply than to a municipal ordinance, and that, therefore, although the Local Option Law has been adopted by the electors of the city of Woodland and its provisions made applicable to the territory embraced within the incorporated limits of said city, the act of soliciting orders or making agreements within said city for the sale or delivery of intoxicating liquors cannot be prevented or penalized, where the intoxicants as to which such solicitation is prosecuted or agreements are made are to be delivered without or beyond such incorporated limits.

The proposition thus decided, however, is of no importance here, so far as is concerned the decision of the question presented for determination in this proceeding. As before stated and as is obvious, the sole question submitted here is whether the respondents have jurisdiction of the subject matter of the complaint and of the person of the petitioner. It is true that, while the complaint charges that the solicitation was carried

on within the incorporated limits of Woodland, it does not
directly appear from or upon the face of that document where
the liquors to which such solicitation related were to be de-
livered—whether within or without the limits of said city.
But the complaint nevertheless states an offense of which the
respondents have jurisdiction, not as a justice's court and the
justice thereof, but as a magistrate's court and a magistrate,
since the penalties prescribed for a violation of the pro-
visions of the act are in excess of those within the power
of a justice's court to impose under the law. (Pen. Code,
sec. 1425.)   The language of the complaint is, in other words,
so far as the element of the offense of which I am now speak-
ing is concerned, in the language of the statute, and, abstractly
viewing it, the complaint alleges facts constituting a charge
which the respondents, as a magistrate's court and a magis-
trate, have the legal authority to preliminarily examine and
to pass upon for the purposes of such hearing (assuming, of
course, that the solicitation of orders by mail is an act which
comes within the inhibitions of the statute), and it is suffi-
cient to charge the offense in the language of the statute; for
it would be a perfect defense to the charge of soliciting and
"the defendant would be completely exonerated" if, either at
the examination or the trial, he should make "a showing that
in fact the delivery was not to be made within the territorial
limits of the town." (*Ex parte Anixter,* 166 Cal. 762, [138
Pac. 353].)

The next point urged against the validity of the proceed-
ings pending before the respondents is, as seen, that the crime
of soliciting orders, taking orders or making agreements
within no-license territory for the sale or delivery of intoxi-
cants therein cannot be committed, within the contemplation
of section 15 of the statute, unless such solicitation or making
of agreements be carried on within such territory in person
by a party or his agent.   In other words, the contention is
that, to constitute either or any of the offenses denounced by
said section, the party charged or his agent must be shown
to have been physically present within the no-license territory
and there in person have solicited or taken such orders or
made such agreements.   This construction of said section is
arrived at by a grammatical analysis of the phraseology
thereof, whereby, considering the construction concretely, it

is sought to be established that the legislature intended the language of the section to be understood as it may be paraphrased as follows: "It shall be unlawful for any person, corporation, firm, company, etc., being at the time within no-license territory, to solicit orders, take orders or make agreements within such territory for the sale or delivery of alcoholic liquors," etc.

In support of the construction thus arrived at, it is asserted that, grammatically, the phrase, "within any no-license territory," as used in the section, "necessarily qualifies the series of nouns commencing with the word, 'person' (as used therein), rather than the verb, 'solicit,' or the still more remote phrase, 'for the sale or delivery.' " As sustaining that theory of the legislative intent, so far as said section is concerned, attention is directed to the rule laid down in section 73 of Black's "Interpretation of Laws" as follows: "As a general rule, relative, qualifying or limiting words or clauses in a statute are to be referred to the next preceding antecedent, *unless the context or the evident meaning of the enactment requires a different construction.*" (The italics are mine.) Or, as the rule is stated in *Piper* v. *Boston etc. R. R.*, 75 N. H. 435, [75 Atl. 1041], "the general rule of grammar and law is that relative terms refer to the next preceding antecedent, *unless it is clear from the context that a different one was intended.*" (Italics mine.)

Not only by implication, from the fact of their reliance upon the rule of interpretation above quoted, do counsel for the petitioner concede that the construction of laws or contracts according to strict grammatical rules will not prevail where such construction is *clearly* opposed to the context or evident spirit or purpose of such laws or contracts, but they expressly admit the soundness of the proposition in their brief. They vigorously contend, however, that their construction of section 15 is in perfect harmony with the spirit and purpose of the local option law. The argument is that the sole and paramount object of said law is, as is claimed to be true of all laws licensing, regulating, or prohibiting the sale of liquor, to control, regulate, or prohibit the *public traffic* in intoxicants; that it is directed against the saloons and places where intoxicating liquor is sold and drunk upon the premises; that the act does not, even if it were competent for the

legislature so to ordain, attempt to ''control or direct indi-
vidual use of liquor, since it expressly exempts from the opera-
tion of its penalties, the act of keeping intoxicants at one's
home in no-license territory for family use or the purposes
of hospitality; that, therefore, the solicitation for orders for
intoxicants to be used for such purposes is an essential inci-
dent of said right.''

But, so the argument runs, even assuming that the soliciting-
ing of orders from individuals within no-license territory was
intended to be and is proscribed, since the law cannot punish
for sales of liquor committed outside of such territory, ''it
cannot be presumed that the usual and ordinary incidents of
sales are prohibited. Accordingly,'' so it is then declared,
''it is the personal soliciting by those within the territory
rather than advertising or the mailing of circulars by those
outside the territory that is sought to be prevented.''

I cannot agree with the petitioner in its construction of
section 15 of the Local Option Act, nor am I impressed with
the various arguments offered in support of such construc-
tion, some of which are briefly given in the foregoing state-
ment of its conception of the intent and scope of said section.
It may well be conceded that the language of said section,
when tested solely by the strict rules of grammar, appears,
upon its face, to be involved in some obscurity. At any rate,
it can be said that the legislative intent as to the scope of the
section could well have been expressed with a greater degree
of perspicuity, or, in other words, its phraseology so arranged
as that there would be left no ground upon which there
could exist any difference of opinion as to what I conceive
must be its true import. But, when examined under the test
of familiar rules of statutory construction, aided by the light
afforded by the vital object which is obviously sought to be
accomplished by the legislation of which it forms a part, no
doubt can reasonably arise that said section was intended by
the legislature to prevent, if possible, or to penalize, if com-
mitted, the solicitation of orders, the taking of orders or the
making of agreements within no-license territory for the sale
or delivery of intoxicating liquors in such territory, irre-
spective of the manner in which such acts may be accom-
plished. By this I mean to say that one who solicits orders
or makes agreements through the instrumentality of letters,

sent to the addresses in no-license territory of persons resid-
ing or being therein, thus brings himself as clearly under the
ban of the statute as if he were to prosecute such solicitation
or make such agreements in person within the boundaries of
such territory.

A fundamental canon of construction is that every statute
must be construed with reference to the object intended to be
accomplished by it. (*People* v. *Dana,* 22 Cal. 11.) "In order
to ascertain this object it is proper to consider the occasion and
necessity of its enactment, . . . and the statute should be
given that construction which is best calculated to advance
its object, by suppressing the mischief and securing the bene-
fits intended." (36 Cyc., p. 1110, and cases cited in the foot
notes.) And, where a statute "is fairly susceptible of two
constructions, one leading inevitably to mischief or absurdity,
and the other consistent with sound sense and wise policy,
the former should be rejected and the latter adopted."
(*In re Mitchell,* 120 Cal. 384, 386 [52 Pac. 799].) The rule
last stated is merely a repetition in another form of the rule
relied upon by the petitioner and above quoted, and has
peculiar force in its application to the proposition that where
a statute may be given a grammatical construction leading to
a result in manifest opposition to its purpose and intent or
in circumvention of its paramount object, such construction
will be rejected and one adopted which will effectuate or carry
out the object designed by the legislature to be accomplished
by the act.

Aided by the foregoing rules, no difficulty seems to be in
the way of reaching an accurate conclusion as to the meaning
and scope which it was the legislative intention that section 15
of the act in question, particularly the words, "solicit orders,"
should bear and possess.

As to the general object and the legality of the legislation
involved in the local option law and incidentally noticing
some of the arguments set up in support of the petitioner's
position, it may first be conceded that the real root of the
mischiefs and evils which too frequently directly result from
the use of intoxicants is in the public retail traffic therein,
and that it is true, as counsel for the petitioner maintain, that
legislation bearing upon the question of intoxicating liquors
is primarily directed against such traffic. It is also true that

.the individual act of using or consuming intoxicants apper-
tains to or comes within the category of a citizen's personal
liberties and with which act governmental interference can
legally be interposed only where the individual use of such
liquors becomes intoxication or alcoholism and thus an in-
fringement of the personal rights and liberties of others.
But, while, as stated, this is all true, it cannot for a moment
be doubted that the great ultimate object of all legislation
upon the subject of intoxicating liquors is, as is obviously true
of the statute in question, to reduce to the lowest minimum
the individual use and consumption of such liquors as bever-
ages and thus diminish intemperance.    And, while the state
may not interfere with the individual act of consumption,
where such act does not develop a condition of which it may
legally take cognizance, it may, nevertheless, adopt such rea-
sonable regulations relative to such private or individual use
and consumption as will prevent it from becoming a public
evil or responsible for conditions or mischiefs equal in enor-
mity or degree to those proceeding directly from the traffic
itself.    Indeed, it is, as before intimated, within the consti-
tutional rights of the legislature, in the exercise of the police
power of the state, to establish any regulation which may tend
to remove every temptation to use intoxicants as beverages
under any circumstances and,which, if permitted to exist, might
have the effect of creating a general sentiment in no-license
territory favorable to the revival of the traffic therein.    It is,
. therefore, within the constitutional competence of the legis-
lature to prohibit, and to authorize punishment for a viola-
tion of the prohibition, every act and form of soliciting for
orders within no-license territory for the sale of intoxicants,
to be delivered in such territory, regardless of the use to which
they may be intended to be put—that is to say, irrespective
of whether the orders so solicited related to individual or
other uses.    In the case here, the statute has made it unlawful
to solicit such orders from all persons within no-license terri-
tory, except, perhaps, as before suggested, registered pharma-
cists, and, although, as shown, individual use of liquors at
one's home for the purposes specified in section 16 is per-
mitted, it is very clear, not. alone from the manifest general
purposes of the law, but also from the fact that the taking
of orders from individuals for liquors to be used at their

homes is not, as is true in the case of pharmacists, authorized by section 15, either expressly or by implication, that the act of soliciting orders from individuals for household purposes was intended to be and is enjoined by the statute. It is, in other words, contrary to said act to solicit orders from or make agreements with any person within the limits of no-license territory for intoxicants, to be delivered therein, except registered and licensed pharmacists. If this be not true, then, manifestly, the law has little, if any, practical meaning for the purposes for which it was passed.

Nor is it important, so far as is concerned either the act of soliciting orders or that of making agreements for the sale or delivery of intoxicants, whether the *sale* contemplated by such solicitation or agreements is consummated outside of the territory, for the gist or gravamen of the offense of soliciting orders or that of making agreements for intoxicants within such territory is in the solicitation or the making of the agreements *with the purpose and intent of delivering such liquors therein.* It is, in other words, not unlike the crime of burglary, which consists of the mere entering of a building with the intent to steal or commit some other crime, irrespective of whether or not any property be actually stolen or any other act which in itself would constitute a different crime was actually committed.

The foregoing views are, I think, in perfect accord with those of the supreme court as expressed in the Anixter case, above referred to, concerning an ordinance whose language is very much like that contained in section 15 of the act under consideration.

It has already been declared that by section 15 it was intended to enjoin every form of solicitation of orders for intoxicants. By this it was intended to be said that, viewing section 15 by the light of the obvious paramount purpose sought to be achieved by the legislation represented by the act, no other reasonable meaning can be deduced from it than that thus it was intended to prevent every kind and character of solicitation, whatever may be its form, whether in person or by letter or other like communications sent either from without or from within no-license territory through the United States mail or by messengers and addressed to persons within

such territory, except pharmacists, at their residences or places of business.

The construction for which the petitioner contends would render the act woefully impotent for the accomplishment of its purpose as a prohibitory measure. It would, indeed, open up an avenue whereby the central object of the statute could be frustrated, almost, if not quite, to the extent of rendering it nugatory. It would, in brief, countenance a gross evasion of the evident spirit and intent of the statute, for liquor dealers engaged in business outside the borders of no-license territory could, with impunity, and immunity from punishment carry on a mail order liquor traffic within such territory (*Rose* v. *State,* 4 Ga. App. 588, [62 S. E. 117]), and thus impart to the act an effect which would make it practically prohibitory of prohibition rather than prohibitory of the liquor business. Besides, such a construction would have the effect of granting to persons licensed to conduct the liquor trade outside the limits of no-license territory privileges exercisable within such territory which cannot be enjoyed by persons residing or doing business therein—that is to say that, while persons engaged in the liquor business outside the boundaries of no-license territory could solicit orders and make agreements touching intoxicants, manufacturers of such liquors maintaining and carrying on their business as such within the limits thereof cannot legally do so, a discrimination which the legislature doubtless has the right to make as to the liquor traffic but which, from the manifestly absurd consequences which would follow therefrom, it cannot reasonably be supposed to have intended; for thereby the city embracing such territory or the county in which it is situated would not only be deprived of its revenues, but of the power of exercising the proper control of the traffic which results from the imposition of the license. (*People* v. *Swenson,* 162 Mich. 397, [127 N. W. 302].)

Counsel, however, perceive no difference between the act of soliciting orders by means of letters or circulars sent through the mail to particular individuals in no-license territory and the circulation in such territory of newspapers, containing among others relating to other matters, advertisements extolling the quality and giving the prices of certain brands of liquor. But there is an obvious distinction between the two

propositions, and it lies in the fact that, in the one case, the minds of particular persons are directly addressed upon a single subject and their attention thus specially called to the subject matter of the letter or circular, while in the other no particular person is appealed to upon any one of the various matters which are usually referred to in or given publicity through the medium of the advertising columns of a newspaper of general circulation. "Solicit," according to Webster's dictionary, is "to apply to for obtaining something; to awake or excite to action; to arouse a desire in," etc., and it may apply to cases where one asks another for a bribe or asks another to commit bribery or larceny and other offenses. (Black's Law Dict., p. 1105.) It implies *personal* petition and importunity addressed to a particular individual to do some particular thing, and it is unquestionably in this sense that the term is used in the statute. If our statute against bribery in terms, as in effect it does, had been made to say that a public officer who *solicited* a bribe for the performance of some act within his official duties, and the officer should, by letter, solicit the payment to him of a bribe, it would not for a moment be questioned that such act of the officer would constitute a solicitation of a bribe within the meaning of the law. So it is and must be true here. A letter or circular, such as the one involved in this case, addressed to a particular person, and emphasizing in alluring terms the superior quality of certain commodities, giving the prices at which they may be purchased, and vigorously importuning the addressee to buy and use the same, can be no less a *personal* solicitation for orders for such commodities than would be the solicitation of a bribe through the medium of a letter or, indeed, than would be the case of like solicitation prosecuted *in person* by the party by whom such letter or circular is sent out. An advertisement can in no sense be held to be a *personal* petition or request addressed to any particular person. The ordinary advertisement so published has the effect only of directing attention, in a general way, to the matter advertised, and is, as before stated, addressed to the general public, wherever such newspaper is circulated.

But there is ample judicial authority for holding that a solicitation of orders by mail for the sale of liquors to be delivered in no-license units within which solicitation of such

orders is in general terms forbidden by law is a violation of the legislative mandate.

In *Rose* v. *State,* 4 Ga. App. 588, [62 S. E. 117], the question is elaborately and ably examined in a case calling for the construction of a section of the Penal Code of the state of Georgia which provided: "If any person shall sell, contract to sell, take orders for or solicit personally or by agent, the sale of spirituous, malt or intoxicating liquors in any county or town or municipal corporation or militia district or other place where the sale of such liquors is prohibited by law, high license or otherwise, he shall be guilty of a misdemeanor." The counties of the state of Georgia are given the authority by a general act of the state legislature to prohibit the traffic in intoxicating liquors within their respective jurisdictions. The defendants were accused of personally soliciting the sale of intoxicating liquors within Bartow County in said state, "said soliciting being made by and through the United States mail, by mailing letters to the citizens of Bartow County from the city of Chattanooga, Tenn., containing self-addressed envelopes, order blanks, and other printed and written matter soliciting the sale of said liquor, said letters having been mailed and delivered" to certain named citizens of said county. It was claimed in that case, as here, that the solicitation of orders for liquor by mail did not constitute the solicitation contemplated or intended by the code section, but that the section applied only to solicitations made by one in person, "and that for that reason the solicitation of sales, referred to, whether it be by the seller himself or by his agent, must be by personal visit to the locality where such sales are prohibited." In support of that contention, special emphasis was placed upon the language of the section, "solicit *personally.*" The court rejected the construction thus given the section and the argument advanced in support of it, saying, *inter alia:* "When we consider that the intention of the act, to which we have already referred, was to make criminal the introduction of intoxicants from a county where the sale of such intoxicants was legal into a county where the sale was prohibited, it is readily to be seen that, while the solicitation which was made penal could be a personal solicitation, it was none the less made a crime for any person, either himself or by an agent, *in any way,* to solicit the sale of intoxicating

liquors where it was prohibited.'' Again the court said: ''We have no difficulty, therefore, in holding that it was the intention of the legislature (in order to make the prohibition laws of those counties that might adopt them effective) to absolutely prohibit the encouragement of purchases of intoxicating liquors in counties which had prohibited the sale, *by any kind or form of solicitation* (italics mine), except that licensed sellers might solicit orders from licensed druggists and licensed physicians.''

In *Hayner* v. *State*, 83 Ohio St. 178, [93 N. E. 900], the Ohio supreme court sustained a verdict whereby the defendant was convicted of the crime of soliciting orders within ''dry'' territory for intoxicating liquors, said soliciting having been done by mail, under circumstances precisely the same as those disclosed by the complaint in this case, the court, among other things, saying: ''We assume that the act of soliciting may be done by letter as well as in person.''

In *State* v. *Holmes*, 68 Wash. 7, [122 Pac. 345], the defendant had been convicted of the charge of soliciting orders for intoxicating liquors within a dry unit, under a statute of the state of Washington making such solicitation a misdemeanor. The soliciting was done, precisely as here, by means of a circular letter sent through the United States mail by the defendant from the city of Seattle, where the sale of intoxicating liquors was then permitted by law, to a citizen of the city of Everett, in said state, which was a unit in which the sale of such liquors was then unlawful. The supreme court of that state upheld the judgment following the verdict of conviction upon the authority, principally, of the case of *Rose* v. *State*, of which it had this to say in its opinion in the Holmes case: ''Upon every point discussed, we regard that opinion as logical, unanswerable, and well sustained by authority. Its reasoning and conclusions, which we approve and adopt, when applied to the facts in this case, not only support the proposition that appellant's act was an unlawful solicitation of orders for intoxicating liquors in a dry unit, but are also convincing to the effect that such unlawful act was committed in the city of Everett, where appellant's letter was received by Swalwell.'' (See, also, *United States* v. *Thayer*, 209 U. S. 39, [52 L. Ed. 673, 28 Sup. Ct. Rep. 426]; *In re Palliser*, 156 U. S. 266, [34 L. Ed. 514, 10 Sup. Ct. Rep. 1034]; *Horner* v.

*United States,* 143 U. S. 207, [36 L. Ed. 126, 12 Sup. Ct. Rep.
407] ; *Burton* v. *United States,* 202 U. S. 344, [6 Ann. Cas.
362, 50 L. Ed. 1074, 26 Sup. Ct. Rep. 688] ; *Danciger* v.
*Stone,* 187 Fed. 861.)

As is shown by the above cited cases, and, indeed, as neces-
sarily follows from the conclusion arrived at here with respect
to the scope of the language, "solicit orders," as employed in
the statute in question, the crime charged against the peti-
tioner was committed upon the receipt of the circular letter
in the city of Woodland by the party to whom it was ad-
dressed, and the venue of the offense is consequently in Yolo
County, in which the city of Woodland is situated. (See cases
above cited, particularly *United States* v. *Thayer.*)

I have carefully examined the brief filed here by counsel
*amici curiae.* It is unnecessary to review in detail the argu-
ments and authorities presented therein. It is enough to say
that most of the points made in said brief are in effect
answered in the foregoing views of the vital questions sub-
mitted by this proceeding. It may be remarked, however,
that many of the cases cited by counsel in the brief referred
to have no application to the case at bar. The cases referred
to have to do with legislation purporting to control, as a police
regulation, businesses which are in themselves legitimate, and
which, though subject to the police power, are essential to the
well-being of society and which can neither be suppressed nor
so regulated as that unjust, burdensome, or discriminatory con-
ditions may be imposed upon them or the right to conduct
them. For instance, the slaughter house, the cemetery, and
other like cases, cited by counsel as *amici curiae,* obviously
deal with occupations in which people have the inherent right
to engage, because they are, unlike the liquor traffic, necessary
and useful; yet they are of a character that, unless managed
in a proper way, they may become a source of great injury
to the comfort and health of communities. Therefore, as
stated, the state, in the exercise of its powers of police, may
regulate the manner of their management so as to prevent, as
far as possible, the injurious results to others which are known
to come from the prosecution of such occupations; but, as
declared, such regulations can neither be prohibitory nor dis-
criminatory in their effect, as is true, in my opinion, as to
legislation affecting the liquor traffic.

I think, for the reasons herein stated, that the respondents have jurisdiction of the proceeding of which complaint is here made, and the order to show cause is, therefore, discharged and the writ dismissed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on April 13, 1914.