THE CITY OF NEW YORK, Respondent, *v.* FRANK W. FOX et al., Appellants.

**Officers — public officer responsible for moneys officially received by him and embezzled by subordinate — rule of respondeat superior applies — New York city — when warden of workhouse and his surety liable for moneys embezzled by appointee.**

1. A public official is absolutely responsible for public moneys officially received by him, but actually in the care of and embezzled by some subordinate.

2. The warden of the workhouse in the city of New York and his surety are responsible under their undertaking and may properly be held liable in an action thereon for moneys received from inmates, in accordance with regulations (L. 1901, ch. 466, § 694), by an appointee of the warden designated by him to receive and keep the said moneys but who embezzled the same. The rule of *respondeat superior* applies and the warden is just as much responsible for the misappropriation by his appointee as he would have been if he had committed the fault himself. (*People ex rel. Nash* v. *Faulkner*, 107 N. Y. 477, distinguished.)

*City of New York* v. *Fox*, 189 App. Div. 440, affirmed.

(Argued October 13, 1921; decided November 22, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 10, 1920, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*John R. Halsey* and *William F. Delaney* for appellants. The moneys deposited with the warden were not public funds. (*People ex rel. Nash* v. *Faulkner*, 107 N. Y. 477; *Obendorfer* v. *City of New York*, 198 N. Y. 583.) A public officer who, as such, receives the money of private individuals, is not absolutely responsible therefor. He is responsible only for good faith and reasonable diligence. (*People ex rel. Nash* v. *Faulkner*, 107 N. Y. 477.)

*John P. O'Brien*, Corporation Counsel (*John F. O'Brien* and *Walter B. Caughlan* of counsel), for respondent. Since the warden possesses power of control, public

policy demands that his responsibility shall be commensurate with such power. (*Village of Oneida* v. *Thompson,* 92 Hun, 16; *Tillinghast* v. *Merrill,* 151 N. Y. 135; *Northern Pac. Ry. Co.* v. *Owens,* 86 Minn. 188; *Smith* v. *Patten,* 131 N. C. 396; *Phillips* v. *Lamar,* 27 Ga. 228; *Havens* v. *Lathene,* 75 N. C. 505; *Shaw* v. *Bauman,* 34 Ohio St. 25.)

HISCOCK, Ch. J. The defendant Fox was warden of the workhouse, Blackwell's Island, New York city, which institution was under the supervision and control of the commissioner of the department of correction. He, as principal, and the defendant insurance company, as surety, executed a bond conditioned that the defendant Fox would faithfully perform the duties devolved upon him in such position of warden of the city workhouse, and account for and pay over all moneys by him received or deposited with him as such warden of the city workhouse in accordance with law.

The commissioner of correction by statute (Greater New York charter, L. 1901, ch. 466, section 694) had the power " to establish rules and regulations for the administration of the department and government of the institutions under his control." In pursuance of such authority, the rules and regulations were established that each person becoming an inmate of said workhouse should deposit his money and valuables with the warden and should be entitled to have the same returned upon his discharge, and also that " The head of any institution will be held responsible for the conduct of his subordinates. * * *

" The head of the institution may, subject to the provisions of law, designate any deputy warden, head keeper, keeper, matron or other employee under his control, to any particular assignment or duty, and such deputy warden, head keeper, keeper, matron or other employee, will be held responsible to the head of the

institution for the proper execution of such an assignment.   *   *   *

" He [the warden] shall make assignments of all employees under his control to such work and duty as may be necessary for the efficient and proper conduct of his institution.

" He [the warden] shall be held directly responsible for the proper care and delivery of clothing, money or valuables of inmates committed to his care."

Under and in accordance with these regulations, persons becoming inmates of said workhouse while Fox was warden, deposited with him upwards of four thousand dollars.  He did not personally receive and retain the custody of these moneys, but appointed one McEvoy to receive and keep the same.  McEvoy embezzled the moneys and the question is whether defendants are responsible under their undertaking for the moneys so embezzled.

No question is raised but that the plaintiff may maintain the action, and this being so, we think that the defendants are liable as has thus far been held.

It is now settled that a public official is absolutely responsible for public moneys officially received by him, but actually in the care of and embezzled by some subordinate.  (*Tillinghast* v. *Merrill*, 151 N. Y. 135.) It is earnestly urged that the moneys deposited with the warden were not public moneys and that, therefore, he having been guilty of no negligence, as we must assume under the offer of evidence made by the defendants, is not responsible for the wrongful conduct of his subordinate.  We think differently.  It was made the official duty of the warden to receive and care for these moneys and to return them at the proper time to the inmates who had deposited them, and he was duly made responsible for the return of such moneys.  He had the choice either personally to receive and retain their custody or to delegate such duties to some subordinate, whom, under wide limitations, he had the right to select.  He

chose the latter course, and when such subordinate and employee embezzled the moneys, we think such offense offered no excuse to the warden for failure to repay them. The case became an ordinary one of *respondeat superior* and the warden was just as much responsible for the misappropriation by his appointee as he would have been if he had committed the fault himself.

The case is different in its governing features than that of *People ex rel. Nash* v. *Faulkner* (107 N. Y. 477), greatly relied on by defendants. In that case the surrogate was compelled to receive and hold private moneys pending distribution. No provision was made for their disposition or custody pending their final disposition. The surrogate acting as was expressly found by the trial court, with due diligence and care, deposited them in a bank, and the bank before repayment failed. Under these circumstances it was held, as we think very reasonably, that the surrogate was not personally responsible for the moneys. He had retained the general custody of them and had put them in what seemed to be a most safe and proper place during his custody. He could not properly do otherwise than he did do, and it would have been both harsh and unreasonable to hold him personally liable because of the default which he was not bound to foresee.

All of that was quite different than what has occurred in this case. Instead of retaining personal control of the moneys and placing them in some proper depository, the warden saw fit to trust a personal appointee to take care of them, and there is no legal reason why he should not be held to that degree of responsibility which ordinarily results between third parties and the employer who selects his own employee.

We think the judgment should be affirmed, with costs.

HOGAN, CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., absent.

Judgment affirmed.