## City of Chicago, Appellee, v. Southern Surety Company, Appellant.

### Gen. No. 30,254.

1. OFFICERS AND PUBLIC EMPLOYEES—*estoppel of city to enforce liability of surety of collector for default of chief clerk*. The City of Chicago is not estopped to assert the liability of a surety upon the bond of its collector for a loss resulting from a conversion of its funds by the principal clerk in such collector's office by reason of the fact that such surety is also surety upon the bond of such clerk, and that because thereof it became surety upon the bond of the collector for a less premium than it otherwise would have done.

2. SURETYSHIP—*contract as determinative of liability*. The obligation of a surety is *strictissimi juris*, and his liability cannot be extended or enlarged beyond the strict condition of his bond.

3. OFFICERS AND PUBLIC EMPLOYEES—*accountability of custodian of public money and his bond.* A public officer who has the custody of public moneys and whose duties with respect thereto are ministerial, as well as the sureties on his bond, are held to the liability of insurers rather than bailees.

4. OFFICERS AND PUBLIC EMPLOYEES—*implied inclusion in bond of existing valid and relevant statutes and ordinances.* Statutes and ordinances, so far as the same are valid and operative at the time of the execution and delivery of a bond of a public officer, enter into such bond and become a part of it as if the same were written out at length in the obligation, and are therefore presumed to have been within the contemplation of the parties.

5. MUNICIPAL CORPORATIONS—*legislative intent as to responsibility of collector for defaults of subordinates.* Under section 22 of article 7 of the Cities and Villages Act, Cahill's St. ch. 24, ¶ 113, and section 78 of the Chicago Municipal Code, it unquestionably was the legislative intent that the city collector should be responsible and that his sureties should be held for any default in duty on the part of the principal clerk, or any other clerk or employee in his office, having anything to do with funds belonging to the City of Chicago.

6. OFFICERS AND PUBLIC EMPLOYEES—*Civil Service Law as affecting power of city collector to remove subordinates.* While the enactment of the Civil Service Law and its adoption by the City of Chicago had the effect of limiting the power of the city collector in respect of the selection and appointment of subordinates in his office by restricting his choice to names of persons on the civil service list, he still has arbitrary and absolute power to remove at his pleasure employees for whose fidelity he has been required to give bond.

7. OFFICERS AND PUBLIC EMPLOYEES—*legislative and municipal intent to require bond of city collector to cover loss due to defaults of subordinates.* Under section 22 of article 7 of the Cities and Villages Act, Cahill's St. ch. 24, ¶ 113, and section 78 of the Chicago Municipal Code, as modified by the Civil Service Act, it was the manifest intention of the city council to require, and of the state to empower the city to require, that the city collector should give a bond that would be sufficient to protect the city from any conversion of its funds by subordinates in the office of the city collector.

8. OFFICERS AND PUBLIC EMPLOYEES—*responsibility of ministerial officers for defaults of their deputies.* Ministerial officers authorized by law to appoint deputies are responsible for the defaults of such deputies.

Appeal by defendant from the Circuit Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the first division

of this court for the first district at the March term, 1925. Affirmed. Opinion filed March 2, 1926. Rehearing denied March 22, 1926.

Cassels, Potter & Bentley, for appellant; Edwin H. Cassels and George C. Bunge, of counsel.

Francis X. Busch, Corporation Counsel, for appellee; Leon Hornstein, First Assistant Corporation Counsel and Albert H. Veeder, Assistant Corporation Counsel, of counsel.

Mr. Presiding Justice Matchett delivered the opinion of the court.

The plaintiff brought an action in debt on the bond given by Age Zylstra as collector of the City of Chicago. The defendant filed certain pleas to which a demurrer was sustained, and electing to stand by its pleas, judgment was entered in favor of the City of Chicago for the amount of the bond, with damages assessed at $81,000.

The breach assigned was that on January 1, 1922, Zylstra had in his hands by virtue of his office the sum of $96,840.06, which it was his duty to immediately turn over, which he failed to do.

The pleas averred that one Henry Wulff was the principal clerk in the collector's office at the times stated in the declaration during the term of Zylstra, and that the funds sued for came into the hands of Wulff and were by him converted to his own use; that the City of Chicago prior to the conversion of these funds demanded that Wulff execute a bond with conditions similar to those of the bond of Zylstra; that Wulff executed such a bond in the amount of $15,000, upon which defendant also became surety; that defendant has admitted its liability on this bond of Wulff to the amount of the penalty, and paid the same without prejudice.

The pleas further averred that other clerks in the collector's office gave bonds with similar conditions and in various amounts upon the demand of the city, upon which bonds this defendant also became surety, and that in assuming this liability defendant relied upon these facts and became surety upon Zylstra's bond for a smaller premium than it otherwise would have demanded; that the City of Chicago is now estopped to assert the supposed obligation incurred on the bonds of Zylstra by reason of any defalcation on the part of Wulff.

Further, it is averred that the city collector never received and never had in his possession as such collector the money mentioned in the declaration; that the same was received and actually held by Wulff as principal clerk in the office of the city collector, and that he never turned over the same, or any part thereof, to Zylstra.

The pleas also set up certain ordinances of the City of Chicago, some of which are averred to be inoperative by reason of the Civil Service Law; that Wulff was appointed pursuant to the provisions of the Civil Service Law; that under that law Zylstra, as city collector, was without authority, obligation or duty as to the fidelity of the employees in his office, except the duty of exercising general supervision or direction over such employees as were certified to him by the Civil Service Commission of the City of Chicago; that Zylstra did exercise such supervision faithfully and honestly and did faithfully perform and discharge all the duties of his office and account for and pay over all moneys received by him as such city collector; that the money in question was not received by Zylstra as city collector, but by Wulff as principal clerk and by Wulff converted, of which Zylstra had neither knowledge nor the means of acquiring knowledge until the whole of it had been converted.

It will be unnecessary to discuss at length some points made in the briefs.

It must be conceded that the obligation of a surety is *strictissimi juris* and that his liability cannot be extended or enlarged beyond the strict condition of his bond. *Cooper v. People,* 85 Ill. 417.

It is also the settled law of Illinois (whatever the rule may be in other States) that a public officer who has the custody of public money and whose duties with respect thereto are ministerial, as well as the sureties on his bond, are held to the liability of insurers rather than bailees. The rule is laid down in many cases. *Ramsay's Estate v. People,* 197 Ill. 572; *People v. Mc-Grath,* 279 Ill. 550; *U. S. v. Prescott,* 3 How. (U. S.) 578; and *Smythe v. U. S.,* 188 U. S. 156.

Again, we are not impressed with the contention of the defendant that the City of Chicago is precluded from maintaining its suit by reason of the fact that it demanded and received from Wulff a bond conditioned for the proper performance of his duties as principal clerk. The mere fact that a special bond was required from Wulff is not, we think, material under the facts which here appear.

The defendant Surety Company invokes the general rule that where the statutes require a public officer to give a general bond conditioned for the performance of the duties of his office, and also require a special bond conditioned for the performance of a special duty, the surety on the general bond is not liable for the failure of the officer in respect to his duties under the special bond in the absence of an express declaration that the surety will be so liable. *Village of Bath v. McBride,* 221 N. Y. 231, 116 N. E. 980, 4 A. L. R. 1428, is cited to this point with *Cooper v. People, supra; Walker v. People,* 95 Ill. App. 637; *People v. Hoover,* 92 Ill. 575, and *People v. Stewart,* 6 Ill. App. 62.

In these and in other cases cited by both sides, an examination discloses that the fundamental and controlling question in determining the liability of ministerial officers in such cases is, what was the legislative intention as expressed in the statutes or ordinances which required the particular bond to be given?

The statutes and ordinances, in so far as the same are valid and existing at the time of the execution and delivery of such a bond, enter into the bond and become as much a part of it as if the same were written at length into the obligation and are therefore conclusively presumed to have been within the contemplation of the parties.

The purpose of requiring a bond is to secure the performance of a duty. There is no reason why the legislature may not require any number of bonds to that end. The principle upon which, in the case of *Cooper v. People, supra,* and other cases upon which defendant relies, the surety upon the general bond was held not to be obligated, was that such particular obligation was not within the contemplation or intention of the parties to the bond. Thus in *Cooper v. People, supra,* the court says: *"There can be no question* but that each bond relates to distinct and independent duties from the other, and, consequently, the sureties upon the one could not have contemplated that they were incurring the same liabilities as the sureties upon the other."

This distinction is pointed out in Mechem on Public Officers, sec. 285, where it is said:

"Sureties who have undertaken to become responsible for the defaults of their principal in respect to a particular office are not liable for the defaults of the same principal in his character as the incumbent *of another and independent office, unless the duties of the second office were by law then made a part of the regular duties of the first, or unless the duties of the*

*second office were such as the officer, as incumbent of the first office, might naturally and legally be called upon to perform.* Thus the sureties of a clerk of court are not responsible for the defaults of the same person while acting as a receiver, nor of a registrar in chancery while officiating as probate judge, nor of a sheriff while acting as trustee.

"But if the duties of the second office are, *ex officio*, part of the duties of the first, or if the law requires the incumbent of the first to perform the duties of the second, the sureties on the bond for the first office, will, *unless such a liability is expressly excluded,* be liable for defaults in the performance of the second."

It therefore becomes necessary to examine the statute and ordinances which required the execution of the bond here sued on in order to determine the legal duties of the collector and the intention of the parties to the execution of the bond.

The power of the City of Chicago to create the office of collector is granted by the Cities and Villages Act. Section 22 of article 7 of that Act [Cahill's St. ch. 24, ¶ 113] provides:

"The comptroller (if there shall be one), the clerk, treasurer and collector, shall, severally, appoint such various clerks and subordinates in their respective offices as the city council or board of trustees may authorize, and shall be held, severally, responsible for the fidelity of all persons so appointed by them."

Section 16 of chapter 4 of the Chicago Municipal Code of 1911, which is set up in the pleas, provides for the establishment of a department of the municipal government, known as the Department of Finance, which the ordinances provide shall have control of the fiscal concerns of the city. Section 17 provides that this department shall embrace the city comptroller, the city treasurer and the city collector, and "all such clerks and assistants as the city council may, by ordi-

nance, provide.'' Section 24 gives to the comptroller general supervision over all officers of the city charged in any manner with the receipts, collections or disbursements of the city revenues and the collection and return of such revenues into the city treasury.

Sections 76 to 78 of the Chicago Municipal Code are as follows:

''76. (Collector—Office Created—Appointment.) There is hereby created the office of city collector. He shall be appointed by the mayor, by and with the advice and consent of the city council.

''77. (Bond.) Said collector shall before entering upon the duties of his office, execute a bond, with sureties to be approved by the city council, in the sum of two hundred and fifty thousand dollars, conditioned for the faithful performance of the duties of his office.

''78. (Clerks—Appointment of—Removal.) Said collector shall appoint according to law such assistants, clerks and subordinates in his office as the city council may authorize, and he may remove any such appointees according to law. He shall be held responsible for the fidelity of any person appointed by him who shall have the custody of public money and he may remove any such person in his discretion for any reason he may deem proper.''

Other sections of the ordinance set up in the pleas require the collector to file with the comptroller monthly a statement of all moneys received by him, and for whom and on what account, to keep books and accounts under the supervision of the comptroller which shall show all receipts and moneys received by him and other matters pertaining to his office. The ordinance further provides that the city collector transmit payments of all moneys received by him, daily, to the city treasurer.

Henry Wulff, as the plea avers, was employed on or about November 20, 1911, according to the laws

of the State of Illinois, and particularly the "Civil Service Law" and the ordinances of the city as to clerks in the office of the city collector, and remained in such employment continuously until the time or times mentioned in the declaration. On October 30, 1912, he became a senior or principal clerk and was continuously such senior or principal clerk during the balance of the term of his employment, and was on or about July 1, 1919, by order of the head of the Department of Finance of the City of Chicago (namely, the city comptroller), required to give his personal bond in the sum of $2,000 which was afterwards, on or about the 2nd day of December, 1920, again by order of the city comptroller, increased to the sum of $15,000.

Under the provisions of section 22 of article 7 of the Cities and Villages Act, and section 78 of the Chicago Municipal Code, *supra,* we think there can be no question that it appears to have been the legislative intention that the collector should be responsible and that the sureties on his bond should be held for any default in duty on the part of the principal clerk, or any other clerk or employee in his office, having anything to do with the funds belonging to the City of Chicago.

The plea, however, sets up that said section 22 of the statute and said section 78 of the Municipal Code have been repealed and rendered inoperative and abrogated through the adoption by the City of Chicago on April 2, 1905, of an act to regulate the civil service of cities, approved and in force March 20, 1895, and proclaimed by the mayor of Chicago on July 1, 1895. [Cahill's St. ch. 24, ¶ 685 et seq.]

The Civil Service Law does not expressly repeal said section 22, but of course, if it is wholly inconsistent therewith, the effect would be its repeal by implication, and if a municipal ordinance is inconsistent with the statute it is necessarily void and of no effect.

Section 3 of the Civil Service Act [Cahill's St. ch. 24,

¶ 687] provides that the Civil Service Commission shall classify all the offices and places of employment in the city with reference to the examinations provided for in the Act, except those which are excepted, and that the offices and places so classified by the commission shall constitute the classified civil service of the city, and that "no appointments to any of such offices and places shall be made, except under and according to the rules hereinafter mentioned." Section 12 [Cahill's St. ch. 24, ¶ 697] provides that no officer or employee in the classified civil service, who shall have been thus appointed, shall be removed or discharged except for cause upon written charges and after an opportunity to be heard in his own defense. It, however, further states: "Nothing in this section shall be construed to require such charges or investigation in cases of laborers or persons having the custody of public money, for the safe keeping of which another person has given bonds."

The defendant contends that the Supreme Court of this State has decided in *People v. Loeffler,* 175 Ill. 585, that section 22 of article 7 of the Cities and Villages Act has been repealed by the Civil Service Act.

In that case a petition for mandamus was filed in the Supreme Court against Loeffler, who was then city collector of the City of Chicago, alleging that he had neglected to notify the Civil Service Commission of the vacancy of positions or places of certain clerks and other employees and subordinates in his office or to make requisitions on the commissioners for the names of persons to fill such vacancies in his office as required by the Civil Service Law and the rules of the commission.

The petition set up that the city clerk maintained that these places and positions were not within the scope and meaning of the Civil Service Act, and that he had the sole power to fill all such vacancies and to

determine what persons should be appointed thereto, and that he had assumed to fill some of the vacancies by appointing persons not on the eligible list prepared by the commissioners. The answer of the city clerk denied the constitutionality of the Civil Service Act and denied that section 22 of article 7 of the Cities and Villages Act had been repealed by the Civil Service Act.

The opinion states:

"It is claimed on the part of the respondent that section 22 is still in force and was not repealed by the Civil Service Act passed in 1895. *It may be said that, in a certain sense, the power to appoint these clerks and subordinates still remains with the city clerk.* The Civil Service Act does not take away the power of appointment absolutely, but qualifies such power by requiring appointments to be made from persons who have been ascertained to be competent by examinations under the Civil Service Act. Under the provisions of the Civil Service Act the city clerk still appoints his clerks and subordinates, and, as the power of appointment thus remains with him, it cannot be said that it has been altogether taken from him by the Civil Service Act, even if that act applies to positions in his office. Neither the city clerk, nor any other public officer, should appoint men to subordinate positions in his office, unless they are qualified to perform the duties of such positions. The Civil Service Act merely substitutes the results of the examinations required by such act for the uncontrolled will of the appointing officer in the matter of selecting those who are to perform the required duties."

The court, therefore, held that the Civil Service Act applied to the clerks and subordinates in the office of the city clerk, stating, "because section 22, above referred to, has been repealed by that act, *so far as the mode of selecting appointees is concerned.*"

The opinion further points out that it had been con-

tended by the respondent in that case that in view of the provision of section 12, which exempted laborers and persons having the custody of public money for the safe-keeping of which another person had given bonds, and in so far as the removal of these officers or employees were concerned, that it was the intention of the legislature that subordinates named in section 22 of the Cities and Villages Act shall not be appointed under the mode prescribed by the Civil Service Act. The court said that it was clear that the section referred to discharges and removals and not to appointments; that appointing officers were thereby allowed greater freedom but their appointment was not thereby vacated. While an appointing officer might have the right to discharge such persons, yet when the vacancy was made by a discharge, the place must be filled by a person who had been examined under the provisions of the act.

We think the contention of the defendant is not sustained by the opinion of the court in *People v. Loeffler, supra;* that the effect of that opinion is that as to the manner of appointment in the office of the collector, the provisions of section 22 of the Cities and Villages Act have been modified by the provisions of the Civil Service Act so that while the city collector has the power to name his clerks and subordinates, he is limited in the naming of them to the persons whose names appear on the civil service list. However, as to the removal of any employee for whose fidelity he has been required to give bond, his power is arbitrary and absolute; he can remove such employee at his pleasure.

If we have correctly construed this opinion, we think under the provisions of the ordinance and statute as modified by the Civil Service Law, it was the intention of the city council, as expressed in the ordinance, to require, and of the legislature of the State, as the

intention was expressed in the statute, to give the City of Chicago power to require, that the city collector should give a bond that would be sufficient to protect the city against any conversion of its funds by subordinates in the office of the city collector.

These ordinances and this statute are as a matter of law conclusively presumed to have entered into the contemplation of the surety and the obligee on the bond at the time the same was executed and delivered. The city had a right to demand such a bond, and the surety is conclusively presumed to know the extent of liability imposed by the statute and the ordinance. Wulff, however appointed, continued to hold his office as principal clerk by the sufferance and indulgence and consent of Zylstra, and it follows that the surety is liable as a matter of law for the money belonging to the city, which was converted to his own use by Wulff.

This case is clearly distinguishable from *Reum v. Rutherford* (Sask.), 37 D. L. R. 715, and *Great Northern Ins. Co. v. Young* (Alberta), 32 D. L. R. 238, cited by the defendant. It was there held that a sheriff was not responsible to individuals for the acts of his deputies who were appointed without affirmative action on his part from the civil service list where he had no power to remove them. In the first place, it does not appear that the power of appointment was pursuant to the authority of statutes similar to the statutes and ordinances set up in defendant's pleas, and the sheriff there did not have the absolute power of removal such as it appears the collector had here.

The defendant seems also to contend that a public officer is not liable for wrongful acts of his official subordinates and cites Mechem on Public Officers, secs. 789 to 801 to this point. Defendant does not, however, point out the particular section upon which it relies. While section 789 states the general rule that a public officer of the government is not liable for his official

subordinates, and in the subsequent sections names postmasters, mail contractors, collectors of customs, captains of ships of war, and district commissaries as officials who are not liable either for the misfeasance or nonfeasance of subordinates, section 797 points out that in the case of officers such as sheriffs, recorders of deeds, clerks of courts, and other ministerial officers authorized by statute to appoint deputies, a different rule obtains, and that such ministerial officers are responsible for the defaults of their deputies.

We think the judgment in this case must be affirmed.

*Affirmed.*

Johnston and McSurely, JJ., concur.