[Civ. No. 11034.   Second Appellate District, Division One.—January 27, 1937.]

EVA VAN VORCE, Appellant, v. CHARLES R. THOMAS, Respondent.

Frederick H. Brock and John F. Bender for Appellant.

Everett W. Mattoon, County Counsel, and J. F. Moroney, Deputy County Counsel, for Respondent.

BISHOP, J., *pro tem.*—Judgment was entered against a deputy marshal of the Municipal Court of Los Angeles County for the damages occasioned by his assault upon plaintiff during the service of process in claim and delivery, but as to the marshal himself a judgment of nonsuit was entered. Plaintiff appeals from the judgment of nonsuit, relying not upon any active or advisory participation of the marshal in the affair, for there was none, but solely upon the theory that the marshal is civilly liable for the damages inflicted by the torts of his deputies which occur in the discharge of their official duties. ▮▮ We hold that in the case of the defendant marshal no such general liability exists.

It does not exist, certainly, by virtue of any express provision of the statute creating the office of marshal of the municipal court and prescribing his duties. (Stats. 1925, p. 648; Deering's Gen. Laws 1931, Act 5238.) Plaintiff's theory is that the liability follows the provision in section 25a of the statute just referred to, by which the significant Political Code sections prescribing the sheriff's duties are made to ''apply to marshals and govern their powers, duties and liabilities''. Nowhere in these sections, however, is to be found a provision that places any liability on the sheriff for the torts of his deputies. Our problem, then, is to examine the doctrine of the sheriff's liability which we have inherited from the common law, to see if it fits the marshal's shoulders.

The most recent case recognizing and applying the doctrine, *Abbott* v. *Cooper,* (1933) 218 Cal. 425 [23 Pac. (2d) 1027], centered its attention on another problem than the reasons for and the nature of the liability. In *Foley* v. *Martin,* (1904) 142 Cal. 256 [71 Pac. 165, 75 Pac. 842, 100 Am. St. Rep. 123], however, the court supports its conclusion that the sheriff was civilly responsible for the torts of his deputy by saying: ''The act of the deputy was the act of the sheriff. The deputy is not the agent or servant of the sheriff, but is his representative, and the sheriff is liable for his acts the same as if they had been done by himself. 'The act constituting the cause of action is that of the defendant, and, though done through a deputy, is considered

in law as done directly and personally by him.' (*Hirsch* v. *Rand*, 39 Cal. 315.)'' The case cited, and from which the quotation was made, in turn referred back to *Whitney* v. *Butterfield*, (1859) 13 Cal. 335, in which, at page 342 [73 Am. Dec. 584], it is said: "It is true that it may be urged that the Sheriff and the Deputy are one person in law." This concept of ''oneness'' was carried to its logical conclusion in the common law. As stated in *White* v. *Johnson*, (1793) 1 Wash. (Va.) 159: ''The cases all prove, that in England, the remedy is against the high sheriff only (in whose name everything is done), for the official acts of his deputy." Accordingly, a judgment against the deputy was set aside. In *Owens* v. *Gatewood*, (1817) 7 Ky. (4 Bibbs.) 494, the same conclusion was reached, the court saying: '' . . . the law is clearly settled, that where the action is founded upon a breach of the duty of the office of the sheriff, it must be brought against the principal, and not the deputy though it be for the default of the latter.''

This idea that the sheriff and his deputy are in the eyes of the law one person, is characterized by Mr. Justice Holmes, in an article entitled ''Agency,'' published in 4 Harvard Law Review 345 et seq., as a legal fiction originating in the law governing the relation of master and slave. Pertinently he states further (p. 346): '' . . . the whole outline of the law is the resultant of a conflict at every point between logic and good sense—the one striving to work fiction out to consistent results, the other restraining and at last overcoming that effort when the results become too manifestly unjust.'' That conflict we find still at work.

Where, as in several counties today, the demands upon the sheriff's office are so few that no salaried deputy is provided by statute, and such deputies as exist owe their appointments to the general power given by section 4024 of the Political Code to each county officer to ''appoint as many deputies as may be necessary for the prompt and faithful discharge of the duties of his office,'' no injustice is apparent in following the traditional train of thought to the conclusion that the sheriff is civilly responsible for the torts of those deputies. As, gradually, paid deputies are added, still appointed and discharged at the sheriff's pleasure, no change in the rule appears urgent. Eventually, however, the gradual changes continue until there appears an office in

which the chief is only one of many holding salaried positions created by law, and his right to employ and terminate employment is no longer unrestricted. Under such circumstances, to make the head of the office respond in damages for the negligent discharge of duties, which he has no choice but to delegate to others, becomes "manifestly unjust". So *Michel* v. *Smith*, (1922) 188 Cal. 199 [205 Pac. 113], and again *Bower* v. *Davis*, (1936) 13 Cal. App. (2d) 678 [57 Pac. (2d) 574], find in the changed situation, particularly the restrictions placed upon the right to employ and sever the employment of assistants, a reason for differentiating the liability of the Los Angeles chief of police from that of the sheriff. So, also, *Lorah* v. *Biscailuz*, (1936) 12 Cal. App. (2d) 100 [54 Pac. (2d) 1125], declines to follow the formula of "personal representative" in the case of the Los Angeles County sheriff, whose deputies are to be appointed and discharged under the regulations of civil service.

It is, of course, utterly impossible for the marshal of the Los Angeles municipal court to perform, personally, all the duties demanded of his office. Not by choice, but of necessity, he depends upon his deputies, and because of the necessity, by statute (sec. 7b, Act 5238, *supra*), he is provided with sixty-eight deputies with set compensation paid monthly, and one hundred more to be paid by the day. Appointments and discharges are to be made under limitations of civil service (secs. 18 and 19, Act 5238, *supra*). In the premises, we know of neither statutory provision nor common-law principle which would justify a judgment against the marshal because one of his civil service deputies was unjustifiably energetic in his endeavor to serve process.

The judgment of nonsuit is affirmed.

York, Acting P. J., and Doran, J., concurred.