[L. A. No. 16274. In Bank.—July 28, 1938.]

UNION BANK & TRUST CO. OF LOS ANGELES (a Corporation), as Executor, etc., Plaintiff, v. COUNTY OF LOS ANGELES et al., Defendants; ALFRED E. DAVIES, as Trustee in Bankruptcy, etc., Intervener and Appellant; L. E. LAMPTON et al., Respondents.

A. I. McCormick and Guy Richards Crump for Appellant.

Everett W. Mattoon, County Counsel, J. H. O'Connor, County Counsel, S. V. O. Prichard, Deputy County Counsel, Hill, Morgan & Bledsoe, Kenneth K. Wright, Joe Crider and A. F. Mack for Respondents.

John J. O'Toole, City Attorney (San Francisco), as *Amicus Curiae*, on Behalf of Respondents.

THE COURT.—Upon further consideration of this case on rehearing we adopt the former opinion as modified:

"This action was brought against the defendant Lampton, as county clerk of Los Angeles County, and the sureties on his official bond, to recover certain money deposited with the said clerk and embezzled by his chief deputy.

"In 1930 a criminal trial was in progress in Los Angeles County, in which two persons were charged with an attempt to extort $75,000 from Charles H. Crawford. With his consent, 75 bills of $1,000 denomination were received in evidence at the trial. Thereafter the deputy clerk of the

trial department delivered them to Liberty A. Hill, chief deputy in the county clerk's office. The practice of the defendant Lampton was to have such exhibits kept in a bank safe deposit box. He entrusted the keys of the box to his chief deputy, and delegated to him the care and custody of the exhibits. Hill put the bills in the box, but later withdrew them and embezzled the money.

"Thereafter plaintiff, executor of the estate of Crawford, brought this action. Prior to his death, Crawford had assigned the sum of $10,000 out of such fund, and plaintiff in intervention seeks the recovery of that sum. The trial court held that neither the defendant Lampton, county clerk, nor his sureties, could be held liable for the loss. From this judgment plaintiff in intervention appealed.

"The first theory advanced to absolve defendants from liability is that the bond of the county clerk does not cover dereliction of duty in the separate office of clerk of the superior court, held *ex officio*. It is contended that these are separate and distinct offices; that defendant Lampton received the money in question as clerk of the superior court and not as county clerk; that, therefore, the bond which he furnished as *county clerk* does not cover the present loss. (See *San Bruno* v. *National Surety Co.*, 119 Cal. App. 27, 31 [5 Pac. (2d) 951]; *People* v. *Burkhart*, 76 Cal. 606 [18 Pac. 776].)

"In examining this contention, it may be well to bear in mind the consequences thereof. Defendant Lampton has given but one official bond, the only one required of him by law, that as county clerk. It appears, however, that in his capacity as *ex officio* clerk of the superior court he received during 1929 and 1930 over $3,000,000 in trust funds, fees and fines. Under defendants' theory this large sum was handled by a public officer with no security whatever for his faithful performance. In the case of defendant Lampton, this would be true for some eighteen years. Moreover, plaintiff points to section 996 of the Political Code, providing that an office becomes vacant upon the refusal or neglect of an officer to file his official bond within 30 days after notice of his election or appointment. The view of defendants, therefore, leads inevitably to the conclusion that either the office of clerk of the superior court in and for the county of Los Angeles is wholly without the protection of a surety

bond, or the office is vacant. These alternatives are so startling, and the results so manifestly contrary to the public interest, that they must be rejected if it is possible to do so, and a brief examination of our Constitution and statutes makes it clear that the law is not as defendants assert it to be.

"The county clerk is by the Constitution made *ex officio* clerk of the superior court (art. VI, sec. 14), and the legislature is given power to prescribe the duties of the county clerk. (Art. VI, sec. 5; see, also, Pol. Code, sec. 4152.) These duties are set forth in the Political Code. In section 4178 of said code, the duties of the *county clerk* are stated, and it is therein provided that he must act as *clerk of the superior court*. Specific duties as clerk of the superior court are thus described as duties of the county clerk. Elsewhere the Political Code provides for the giving of a bond by the county clerk. (Pol. Code, sec. 4022.) The condition of an official bond is that the principal will faithfully perform 'all official duties then required of him by law and also such additional duties as may be imposed on him by any law of the state of California.' (Pol. Code, sec. 954.) Defendant Lampton filed a bond providing that he should faithfully perform all official duties 'imposed upon or required of him by law, ordinance or the charter of the county of Los Angeles. . . . '

"It follows that in his activities as clerk of the superior court defendant Lampton was carrying out the duties imposed by law upon him as county clerk, and for any dereliction in such activities, his surety is responsible. This conclusion is compelled by the terms of the statute, and needs no citation of other authority. However, there is support for the general doctrine that where a surety becomes responsible for the defaults of a principal with respect to a particular office, and the principal also holds a second office, the duties of which are by law made a part of the duties of the first, the surety is responsible for defaults in performing the duties of the second. (See *Redwood City* v. *Grimmenstein*, 68 Cal. 512 [9 Pac. 560]; Mechem, Public Officers, sec. 285; Throop, Public Officers, sec. 236.)

"The second theory of defendants is that since the county clerk did not himself commit any wrongful act, it is necessary, as a basis of liability of the surety, to establish liability

of the clerk for the wrongful act of his deputy; and they argue that the said clerk is not liable generally for torts of his deputies, who are themselves public officers, holding offices created by the charter adopted pursuant to constitutional authority, and serving under civil service regulations.

"It may be conceded that in the absence of statute the modern view is opposed to making public officers civilly liable for torts of deputies, where the latter are themselves statutory officers and not under the superior's unrestricted control or right of hiring and discharging. (See *Michel* v. *Smith*, 188 Cal. 199 [205 Pac. 113] [municipal police officer]; *Van Vorce* v. *Thomas*, 18 Cal. App. (2d) 723 [64 Pac. (2d) 772] [deputy marshal of municipal court]; *Pavish* v. *Meyers*, 129 Wash. 605 [225 Pac. 633, 34 A. L. R. 561] [police officer]; note, 43 Harv. L. Rev. 327.) The other view is usually grounded upon the identity of the officer and his deputy or the unrestricted right of control. (See *Foley* v. *Martin*, 142 Cal. 256 [71 Pac. 165, 75 Pac. 842, 100 Am. St. Rep. 123]; *Duluth* v. *Ross*, 140 Minn. 161 [167 N. W. 485]; *New York* v. *Fox*, 232 N. Y. 167 [133 N. E. 434].) In the instant case the clerk's deputies are independent statutory officers within the rule of such cases as *Michel* v. *Smith, supra*, and *Van Vorce* v. *Thomas, supra*. But this does not dispose of our problem. We are satisfied that defendant Lampton and his sureties are not liable under common law principles of tort or agency. But liability may exist by reason of the language of the statute and the surety bond. (See *Grays Harbor Const. Co.* v. *Paulk*, 179 Wash. 300 [37 Pac. (2d) 584]; *Chicago* v. *Southern Surety Co.*, 239 Ill. App. 628, 640.) And upon an examination of the statute and the bond, it becomes clear that defendants are liable under their terms.

"Political Code section 958 requires all official bonds to contain 'such conditions as required by this chapter, or the law creating or regulating the duties of the office'. Section 959 provides: 'Every official bond executed by any officer pursuant to law is in force and obligatory upon the *principal* and *sureties* therein for any and all breaches of the conditions thereof committed during the time such officer continues to discharge any of the duties of or hold the office, *and whether such breaches are committed or suffered by the principal officer, his deputy, or clerk.*' In defendant Lamp-

ton's bond one of the conditions reads: 'and further that if all deputies, assistants, clerks and employees appointed by him, or otherwise, and all and each of them, shall faithfully perform all of the duties that are now, or hereafter may be lawfully imposed upon or required of them, and all and each of them as such deputies, assistants, clerks or employees, then this obligation to be void; otherwise to remain in full force and effect'. And the bond recites, in conformity with the statute, that 'we, L. E. Lampton' and the named surety, 'are jointly and severally bound'.

"The purpose and effect of these provisions are entirely clear; the liability imposed upon Lampton and his surety is one expressly required and fully contemplated by the parties; and the defendant surety has been compensated for the assumption thereof. Defendants suggest that section 959 of the Political Code was adopted at a time when the deputies of a public officer were not statutory officers but were employed by him and subject to his personal control, and that consequently the words 'his deputy' must be deemed to refer only to persons so controlled. There is no force in this argument. If the present 'deputies' of the county clerk are not 'his deputies', then what positions do they hold? His deputies did not cease to be such when they came under civil service regulations. The express terms of the statute are clearly applicable here, and the language requires no construction.

"It is true that in Lorah v. Biscailuz, 12 Cal. App. (2d) 100 [54 Pac. (2d) 1125], the court held that neither the sheriff nor his surety was liable for torts of a deputy, even though the bond expressly covered acts of the deputies. The opinion is based upon two theories: first, that the plaintiff's right of action was derived solely from Political Code section 961 which mentions the officer but not his deputies; and second, that since the sheriff is not liable in tort for acts of his deputies, the bond was in this respect given without consideration. Upon careful study we are convinced that neither theory is sound. Political Code section 961 was not intended to limit liability, but rather to give a right of action; and it does not nullify the express provisions of section 959, placing the liability for acts of deputies upon 'the principal and sureties'. Under section 959 and the joint and several bond executed by defendant Lampton and

his sureties, defendant Lampton is liable for the acts of his deputies in the sum mentioned in the bond. And the surety, having expressly assumed the liability of its bond for the premium demanded, cannot claim that any condition of the said bond is without consideration.'' We are therefore of the opinion that the case of *Lorah* v. *Biscailuz, supra,* was, on the question of liability under the bond, wrongly decided, and it is disapproved.

''It may be observed that the legislature in 1933 recognized the problem arising from unbonded subordinates and provided that appointed deputies may be required by the officer to give individual bonds, or be covered by a 'master official bond'. (See Pol. Code, sec. 985.) This statute offers the innocent officer a means of protection against such liabilities as considered herein.''

█ Defendants also raise the defense of estoppel based upon evidence showing that in September, 1930, Crawford's attorney examined the bills which were then in the custody of Lampton and found that 70 of those which the court had ordered held as exhibits were in the safe deposit box with five different ones of the same denomination. The explanation made by Hill, who took the bills from the box for the attorney's examination, was that $5,000 had been placed in a bank account for the purpose of earning enough interest to pay the rental of the box. Two months before this time Lampton had been served with a restraining order issued out of the United States District Court in an action brought by the predecessor in interest of the appellant seeking a judgment for $40,000 against Crawford. The order of the federal court restrained Lampton from delivering the money in his custody to any one pending the further order of the court. The final decree in that case adjudged intervener to be the owner of and entitled to the payment of $10,000 of the amount held by Lampton.

It was stipulated that the appellant had no notice of the acts or conduct which it is charged constitute an estoppel. On the other hand, from the time the restraining order was served upon Lampton he knew that the appellant's predecessor in interest claimed the money in his possession. Under these circumstances, the subsequent acts or omissions of Crawford or his attorney do not bar a recovery by the appellant.

The judgment is reversed.