[Sac. No. 6894.   In Bank.   Apr. 8, 1958.]

THE COUNTY OF PLACER, Respondent, v. AETNA CASUALTY AND SURETY COMPANY et al., Appellants.

Robinson & Robinson and D. R. Robinson for Appellants.

Al. B. Broyer, District Attorney, for Respondent.

CARTER, J.—This is an appeal by defendants, Aetna Casualty and Surety Company, United Pacific Insurance Company, and Leonard M. Layton, from a judgment entered upon a verdict by a jury. The verdict was directed by the court in favor of the plaintiff.

The facts are not in dispute. Defendant Sherlie Bennett (who defaulted) was the clerk of the Roseville Judicial District Court in Placer County and had been appointed to that position by defendant Leonard M. Layton, judge of said court. On January 1, 1952, the Roseville Justice's Court was consolidated with the Roseville City Court whereby the Roseville Judicial District Court came into being. Judge Layton had been judge of the Roseville Justice's Court for many years prior to the consolidation and thereafter became judge of the Roseville Judicial District Court. After the consolidation the Placer County Board of Supervisors authorized the employment of a clerk and Sherlie Bennett was hired to fill the position at that time. She served until her arrest in November, 1954. In 1951, defendant Aetna Casualty and Surety Company bonded Judge Layton, as principal, with itself as surety, in the sum of $1,000 for Judge Layton's four year term which began on January 8, 1951. Defendant United Pacific executed a similar suretyship bond in the sum of $5,000 for Judge Layton's term which began on January 5, 1953.

Both of these bonds were executed by Judge Layton. The county of Placer purchased a blanket employees' bond which became effective on February 1, 1954, and which covered Sherlie Bennett. The total amount of money stolen by Sherlie Bennett was set at $11,807.75, of which the blanket employees' bond paid off all but $4,548.50 and the prayer of the complaint was amended to conform to that figure.

On July 1, 1953, the county's auditors found a shortage of $1,647.25 which was called to the attention of the Placer County auditor who called it to the attention of the chairman of the board of supervisors who was also the supervisor from the Roseville District. The shortage was formally called to the attention of the board of supervisors on November 16, 1953. Sherlie Bennett had been allowed to make up the shortage and the formal written audit filed on November 16, 1953, carried a notation that the deficit had been substantially made up.

When the county's auditors began their fiscal year audit in July, 1954, more shortages in the Roseville Court were discovered and a special audit was requested of the board of supervisors. The special audit, as heretofore noted, disclosed a total deficiency of $11,807.75.

The chairman of the board of supervisors testified that he called Judge Layton's attention to the $1,647.25 shortage indicated in the audit report of November 16, 1953. Judge Layton testified that he knew nothing about the $1,647.25 shortage until the day after Sherlie Bennett was arrested. The record shows that during the time of the 1953 audit Judge Layton, a man 70 years of age, was seriously ill in the hospital and did not sit on the bench during September and October while he was recuperating from his illness.

The record shows that Sherlie Bennett used many different methods in embezzling the funds turned over to her in her official capacity as clerk of the court. As examples, she would alter the official receipts by changing one from $250 to $2.50; she would void receipts or issue no receipts at all; she also obtained for her personal use official receipt books which she kept in her own possession and which were never turned in to the proper authorities. Other methods used by her are too detailed to repeat here and it is unnecessary to do so since the conclusion is inescapable that she was guilty of the crime of embezzlement.

The primary question involved here is whether Judge Layton is absolutely liable under section 1504 of the Government

Code, or whether he is liable only if negligent as provided for in section 1953.5 of the same code.

Section 1504, which was enacted in 1872 (Pol. Code, §§ 959 and 960) and as it read prior to the 1955 amendment, provides: "Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein for:

"(a) Any and all breaches of the conditions thereof committed during the time such officer continues to discharge any of the duties of or hold the office, and whether such breaches are committed or suffered by the principal officer, his deputy or clerk.

"(b) The faithful discharge of all duties which may be required of such officer by any law enacted subsequently to the execution of the bond."

Section 1953.5 which was enacted in 1949, and amended in 1951, provides: "No officer of the State, or of any district, county, city and county, city, or judicial district, is liable for moneys stolen from his official custody unless the loss was sustained because the officer failed to exercise due care."

It is defendants' position that the 1927 amendments to Penal Code, sections 484 and 490a, brought embezzlement and larceny within the word "theft"; that the word "stolen" includes embezzlement. Section 490a of the Penal Code, as added in 1927, provides: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." It is plaintiff's position that the elements of the various crimes remain the same despite the amendment (*People* v. *Tullos,* 57 Cal.App.2d 233, 237 [134 P.2d 280]) and that section 1953.5 of the Government Code applies where larceny, and not embezzlement, is involved. Plaintiff also relies upon the case of *Union Bank & Trust Co.* v. *Los Angeles,* 11 Cal.2d 675 [81 P.2d 919], decided by this court in 1938, where the county clerk was held absolutely liable for the embezzlement of a deputy county clerk under the bonds required by sections 958 and 959 of the Political Code (Gov. Code, §§ 1500, 1503 and 1504). Defendants argue that the "harsh rule" of the Union Bank case was changed by the Legislature when, in 1949, Government Code, section 1953.5 was enacted. In the Union Bank case, the court said (p. 679): " 'It may be conceded that in the absence of statute the modern view is opposed to making public officers civilly liable for torts of

deputies, where the latter are themselves statutory officers and not under the superior's unrestricted control or right of hiring and discharging. (See *Michel* v. *Smith,* 188 Cal. 199 [205 P. 113] [municipal police officer] ; *Van Vorce* v. *Thomas,* 18 Cal.App.2d 723 [64 P.2d 772] [deputy marshal of municipal court] ; *Pavish* v. *Meyers,* 129 Wash. 605 [225 P. 633, 34 A.L.R. 561] [police officer] ; note, 43 Harv.L.Rev. 327.) The other view is usually grounded upon the identity of the officer and his deputy or the unrestricted right of control. (See *Foley* v. *Martin,* 142 Cal. 256 [71 P. 165, 75 P. 842, 100 Am. St.Rep. 123] ; *Duluth* v. *Ross,* 140 Minn. 161 [167 N.W. 485] ; *New York* v. *Fox,* 232 N.Y. 167 [133 N.E. 434].) *In the instant case the clerk's deputies are independent statutory officers within the rule of such cases as Michel* v. *Smith, supra, and Van Vorce* v. *Thomas, supra. But this does not dispose of our problem.* We are satisfied that defendant Lampton and his sureties are not liable under common law principles of tort or agency. *But liability may exist by reason of the language of the statute and the surety bond.* (See *Grays Harbor Const. Co.* v. *Paulk,* 179 Wash. 300 [37 P.2d 584] ; *Chicago* v. *Southern Surety Co.,* 239 Ill.App. 628, 640.) And upon an examination of the statute and the bond, it becomes clear that defendants are liable under their terms. . . .' " (Emphasis added.) Section 1504 of the Government Code provides for breaches committed "by the principal officer, his deputy or clerk." The bonds executed by Judge Layton make no mention of any deputy or clerk as did the bonds involved in the Union Bank case. While in the Union Bank case the court specifically noted that the deputy who embezzled the funds was an independent statutory officer, the county clerk was held liable because of the language of the statute and the bond. The case is very like the one before us except for the terms of the bonds involved and except that after the Union Bank case was decided the Legislature enacted section 1953.5 of the Government Code. ■ Insofar as the failure of the bonds to include clerks and deputies in the case at bar is concerned, the matter is covered by the case of *Hartford Acc. etc. Co.* v. *City of Tulare,* 30 Cal.2d 832, 837 [186 P.2d 121], where we said that "The terms of a statute dealing with official bonds fixing the obligation of the surety within the penal sum specified are read into the bond and become a part of it."

■ The rule stated in *Michel* v. *Smith,* 188 Cal. 199, at pages 201, 202 [205 P. 113], is that "A public officer is not

responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally co-operated therein. (23 Am. & Eng. Ency. of Law, 382; Story on Agency, § 319; *Robertson* v. *Sichel*, 127 U.S. 507-515 [32 L.Ed. 203, 8 S.Ct. 1286, see also Rose's U.S. Notes]. See also note to 12 Ann.Cas. 184.) In opposition to this principle of law we are cited to those instances in which a sheriff has been held responsible for the acts of his deputies, but the respondent loses sight of the distinction between the two situations, which is recognized in the decisions. A sheriff is responsible for the acts of his deputies, for they are acting in his private service and in his name and stead, and are only public officers through him. The deputy is not the agent or servant of the sheriff but is his representative, and the sheriff is liable for his acts as if they had been done by himself. (*Foley* v. *Martin*, 142 Cal. 256, 260 [100 Am.St.Rep. 123, 71 P. 165, 75 P. 842].) A different rule prevails in the case of the chief of a municipal police department. He may even be charged with the duty of selecting the members of the force, but he is not responsible for their acts, unless he has directed such acts to be done, or has personally co-operated in the offense, for each policeman is, like himself, a public servant. (*Casey* v. *Scott*, 82 Ark. 362 [118 Am.St.Rep. 80, 12 Ann.Cas. 184, 101 S.W. 1152].) The question was squarely presented and considered in this last case. An ordinance of the city of Texarkana provided for a dog tax and the manner of collecting the same. It contained a provision that the chief of police of the city should employ a dog-catcher whose duty it should be to enforce the ordinance. The action was one brought against the chief of police, the dog-catcher appointed by him, and the city for the negligence of the dog-catcher. On an appeal by the chief of police from a verdict directed against him and the dog-catcher, the court said that in so far as the relation of the appellant to the action was concerned, the dog-catcher was a public servant selected by the chief of police, just as a patrolman would be selected by him or a mayor, or other appointing power, and held 'there is no liability in such case, unless the appointing officer fails to exercise reasonable care in the selection of the appointee, a question not presented.' (See also a case somewhat in point, *Baisley* v. *Henry*, 55 Cal.App. 760 [204 P. 399].)'' The rule announced

in the Michel case, heretofore quoted, has been followed in *Kangieser* v. *Zink*, 134 Cal.App.2d 559, 560 [285 P.2d 950]; *Sarafini* v. *City & County of San Francisco*, 143 Cal.App.2d 570, 575 [300 P.2d 44]; *Reed* v. *Molony*, 38 Cal.App.2d 405, 410 [101 P.2d 175]; *People* v. *Standard Acc. Ins. Co.*, 42 Cal. App.2d 409, 411 [108 P.2d 923]. In the latter case which was decided in 1941 it was said that (p. 411): "The modern view adopted in this state is that public officers are not civilly liable for torts of deputies, when the latter are themselves statutory officers or not under the superior's unrestricted control or right of hiring and discharging. (*Michel* v. *Smith*, 188 Cal. 199 [205 P. 113]; *Van Vorce* v. *Thomas*, 18 Cal.App.2d 723 [64 P.2d 772]; *Union Bank & Trust Co.* v. *Los Angeles County*, (Cal.) 74 P.2d 240.) [A rehearing was granted in the Union Bank & Trust Company case and the opinion modified and reported in 11 Cal.2d 675 (81 P.2d 919).]"

In the case at bar the position of clerk of the Roseville Judicial District was created, and the employment of the clerk was authorized, by the Placer County Board of Supervisors. Judge Layton testified that "The office of Clerk was created and I was informed to that effect before the new court system went into effect, I think, in December." When asked who filled the office and how it was done, he replied: "I was informed by,—I don't remember whether it was by a letter from the Board of Supervisors or by one of the members of the Board personally, that I was allowed a Clerk, and just what wording was used I cannot remember but it was apparently left to me to find somebody to fill that position." The chairman of the board of supervisors testified that "The position was created by the Board of Supervisors and under the rule that we used in Placer County we created the position, set the salary and the department head hired his own help." Under the rules of the cases heretofore cited and discussed it appears that Sherlie Bennett was herself "a servant of the government." In such an event, Judge Layton is not responsible for her conduct unless he directed it, participated therein, or, as one of the cases brought out, "countenanced" it. The record shows, without conflict, that Judge Layton cannot be held liable for the embezzlement of Sherlie Bennett under the rule stated in *Michel* v. *Smith*, 188 Cal. 199 [205 P. 113], and the subsequent cases following the same rule, since he neither directed, participated in, or countenanced the clerk's embezzlement of the moneys entrusted to his custody.

It has long been the rule in this state that statutes

relating to the same subject matter are to be construed together and harmonized if possible (*Estate of Wedemeyer*, 109 Cal.App.2d 67 [240 P.2d 8]; *In re Petraeus*, 12 Cal.2d 579, 582 [86 P.2d 343]; *People* v. *Trieber*, 28 Cal.2d 657, 661 [171 P.2d 1]; *Lucas* v. *City of Los Angeles*, 10 Cal.2d 476, 483 [75 P.2d 599]; *Pierce* v. *Riley*, 21 Cal.App.2d 513, 518 [70 P.2d 206]). ██ Section 1504 imposes absolute liability for "any and all breaches" of the conditions of the official bond executed by any principal officer, his deputy or clerk; section 1953.5 imposes liability for "moneys stolen" from a judicial district officer's official custody only when the public officer fails to exercise due care. ██ Under the Penal Code statutes heretofore cited and quoted the term "moneys stolen" most certainly includes the crime of embezzlement even though the elements of the crime itself remain unchanged. While section 1504 covers the situation here involved in a general way, section 1953.5 refers specifically to a "judicial district" and the liability of an officer for "moneys stolen" from his official custody. Section 1953.5 was added to the Government Code in 1949 (Stats. 1949, ch. 1598, p. 2845, § 1) and amended in 1951 (Stats. 1951, ch. 1553, p. 3537, § 15) by substituting the words "judicial district" for the word "township." ██ Where the terms of a later specific statute apply to a situation covered by an earlier general one, the later specific statute controls (*People* v. *Haydon*, 106 Cal.App.2d 105, 111 [234 P.2d 720]). As we held in *Rose* v. *State*, 19 Cal.2d 713, 723, 724 [123 P.2d 505]: "It is well settled, also, that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (See also *People* v. *Moroney*, 24 Cal.2d 638, 644 [150 P.2d 888]; *Coker* v. *Superior Court*, 70 Cal.App.2d 199, 201 [160 P.2d 885]; *Whittemore* v. *Seydel*, 74 Cal.App.2d 109, 120 [168 P.2d 212].)

Inasmuch as the Union Bank case, *supra*, 11 Cal.2d 675, was decided in 1938 and prior to the enactment in 1949 of section 1953.5 of the Government Code and its amendment in 1951, and since this court there specifically held that absolute liability existed "because of the language of the statute" it is not controlling here.

■ Defendants also complain that the trial court erred in directing a verdict and thus removing from the case the issue of whether or not Judge Layton exercised due care. This contention is meritorious because of our conclusion that section 1953.5 of the Government Code is controlling in the case at bar rather than section 1504 of the same code.

The judgment is reversed with directions to the trial court to retry the case on the issue of the exercise, or lack thereof, of due care on the part of Judge Layton.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and McComb, J., concurred.

SPENCE, J.—I dissent. For the reasons stated by the District Court of Appeal, Third Appellate District, when this cause was decided by that court (*County of Placer* v. *Aetna Casualty & Surety Co.* (Cal.App.) 317 P.2d 639), I would affirm the judgment.